**LAW OFFICES OF JOSEPH M. HOATS**
**JOSEPH M. HOATS (STATE BAR NO. 141599)**
**12672 LIMONITE AVENUE, STE 3E #345**
**CORONA, CA 92880**
**TELEPHONE: (310) 920-5806**
**FACSIMILE: (626) 529-0834**
**EMAIL: JOSEPHHOATS.HOATSLAW@GMAIL.COM**

Attorney for Plaintiff(s)
SUSAN E. HAMMATT, Individually
SUSAN E. HAMMATT, as Conservator of CHRISTOPHER S. HAMMATT,
CHRISTOPHER S. HAMMATT as Conservatee,
CHRISTOPHER S. HAMMATT, individually,

# IN THE UNITED STATES DISTRICT COURT
# FOR THE CENTRAL DISTRICT OF CALIFORNIA
# EASTERN DIVISION, RIVERSIDE

| | |
|---|---|
| SUSAN E. HAMMATT, individually, SUSAN E. HAMMATT, as Conservator of CHRISTOPHER S. HAMMATT, and CHRISTOPHER S. HAMMATT as Conservatee, CHRISTOPHER S. HAMMATT, individually,<br><br>   Plaintiff(s),<br><br>vs.<br><br>GENERAL MOTORS COMPANY, A Delaware Company, GENERAL MOTORS, LLC, CHEVROLET DIVISION OF GENERAL MOTORS d/b/a CHEVROLET, JIMMIE JOHNSON KEARNY MESA CHEVROLET, SELECT AUTOMOTIVE HOLDINGS, INC., HENDRICK CO AUTOMOTIVE, LLC, AUTOLIV, INC., DELPHI AUTOMOTIVE SYSTEMS, LLC., DELPHI CORPORATION, and DOES 1 through 50, inclusive,<br><br>   Defendant(s). | ) Case No.<br>)<br>) **COMPLAINT FOR DAMAGES AND**<br>) **OTHER RELIEF:**<br>)   _Jury Trial Demanded_<br>)<br>) 1) Negligence;<br>) 2) Strict Liability;<br>) 3) Negligent Infliction of Emotional Distress;<br>) 4) Fraudulent Concealment;<br>) 5) Breach of Implied Warranty of Merchantability;<br>) 6) Breach of Implied Warranty of Fitness for a Particular Purpose;<br>) 7) Negligent Failure to Warn;<br>) 8) Breach of Express Warranty;<br>) 9) Fraudulent Misrepresentation;<br>) 10) Violations of the Consumer Legal Remedies Act (CLRA);<br>) 11) Violation of Bus. and Prof. Code § 17200;<br>) 12) Violation of Bus. and Prof. Code § 17500;<br>) 13) Civil RICO 18 U.S.C § 1961 _et. seq._;<br>) 14) Loss of Consortium. |

**COMES NOW,** Plaintiff SUSAN E. HAMMATT, individually (hereinafter "SUSAN" or "Mrs. HAMMATT" or "PLAINTIFF(s)"), SUSAN E. HAMMATT, as Conservator of CHRISTOPHER S. HAMMATT (hereinafter "CHRIS" or "CHRISTOPHER" or "Mr. HAMMATT" or "PLAINTIFF(s)"),CHRISTOPHER S. HAMMATT, as Conservatee and CHRISTOPHER S. HAMMATT, individually (hereinafter "ROBERT" or "ROBERT W. HAMMATT" or "PLAINTIFF(s)") by and through undersigned counsel, hereby files this COMPLAINT FOR DAMAGES (hereinafter "Complaint"), against Defendant(s) the GENERAL MOTORS COMPANY, A Delaware Company (hereinafter "GENERAL MOTORS COMPANY" or "GENERAL MOTORS" or "GM" or DEFENDANT(s)"), CHEVROLET DIVISION OF GENERAL MOTORS d/b/a CHEVROLET (hereinafter "CHEVROLET" or "DEFENDANT(s)"), JIMMIE JOHNSON KEARNY MESA CHEVROLET (hereinafter "JIMMIE JOHNSON" or "DEFENDANT(s)") , SELECT AUTOMOTIVE HOLDINGS, INC. (hereinafter "SELECT" or "DEFENDANT(s)"), HENDRICK AUTOMOTIVE GROUP (hereinafter "HENDRICK" or "DEFENDANT(s)"), AUTOLIV, INC. (hereinafter "AUTOLIV"), DELPHI AUTOMOTIVE SYSTEMS, LLC., DELPHI CORPORATION (hereinafter "DELPHI"), and DOES 1 through 50, inclusive, and each of them (hereinafter "Defendants"), and in support thereof, avers where Jurisdiction is proper in this complaint and WHO COMPLAIN AND ALLEGE AS FOLLOWS:

# TABLE OF CONTENTS

Introduction                                                                4

I.   General Allegations – Jurisdiction                                      8

II.  Venue                                                                  14

III. Background Facts and Allegations                                       15

IV.  Causes of Action                                                       34

     a.  Negligence                                                         34

     b.  Strict Liability                                                   38

     c.  Negligent Infliction of Emotional Distress                        41

     d.  Fraudulent Concealment                                            41

     e.  Breach of Implied Warranty of Merchantability                     45

     f.  Breach of Implied Warranty of Fitness for a Particular Purpose    47

     g.  Negligent Failure to Warn                                         48

     h.  Breach of Express Warranty                                        49

     i.  Fraudulent Misrepresentation                                      50

     j.  Violations of the Consumer Legal Remedies Act (CLRA)              52

     k.  Violation of Bus. and Prof. Code § 17200                         58

     l.  Violation of Bus. and Prof. Code § 17500                         61

     m.  Civil RICO 18 U.S.C. § 1961 *et. seq.*                           63

     n.  Loss of Consortium                                               68

V.   Prayer for Relief                                                     70


     EXHIBITS

**INTRODUCTION**

This is a complaint for damages alleging *FOURTEEN causes of action* against the named Defendants for their involvement and violations of various statutes in the manufacture, marketing, sale, repair and fraudulent concealment of known defects to the 2014 Chevrolet Cruze.  The Vehicle of this complaint was manufactured by General Motors (known as the NEW GM) and they are responsible for several defects, including but not limited, Safety Systems, Airbags, Ground Faults and Ignition Failures, that caused injury to the Plaintiff(s) when the Vehicle, only after two days of ownership and approximately 430 miles, by having a catastrophic system failures caused the Vehicle to malfunction prematurely deploying the "side curtain" airbags.  The force of the premature airbag deployment caused one of the Plaintiffs to suffer a Traumatic Brain Injury (TBI) taking away his career as a successful attorney in Southern California and causing his family to lose a father, husband and role model.  The Defendants cancelled the sales contract for the Vehicle pending the investigation of the incident.  The Vehicle was repaired and the defective components replaced with new components and the old ones destroyed as to avoid inspection by a third party.  After the Vehicle was repaired, the Defendants again offered to sell the Vehicle to the Plaintiffs with price incentives and extended warranties.  Ultimately, the Vehicle was sold to a third party who was never informed of the true defects in the Vehicle and to aide in the "cover-up" the Defendants purposefully misreported to third parties the true nature of the defect and hid the repairs within their exclusive dealer communication network.  All of these violations are part of a widespread criminal *enterprise* engaged in a *pattern of racketeering activity* across State lines, and a conspiracy to engage in *racketeering activity* involving numerous RICO predicate acts during the past ten (10) calendar years.

**IRRESOLVABLE DIFFERENCES VIS-À-VIS MDL LITIGATION**

This complaint is significantly different, in that, the airbags deployed outside the parameters set for deployment. The force of the premature airbag deployment caused one of the Plaintiffs to suffer a Traumatic Brain Injury (TBI) ruining his career as a successful attorney in

Southern California and causing loss of a father, husband and role model to his family.  The Defendants cancelled the sales contract for the Vehicle pending the investigation of the incident.  Ultimately, the Vehicle was repaired and the defective components replaced with new components and the old ones destroyed as to avoid inspection by a third party.  The components replaced were **NOT** the ignition components found to be defective in the other vehicles that are part of the ignition switch litigation.

*General Motors, themselves, have declared non-applicability with the General Motors Ignition Fund and similar matters.*  Specifically, this matter was submitted for a claim and was denied because it was determined that this incident did **NOT** meet the parameters of the settlement and litigation involving ignition switch failures.[1]

After the Vehicle was repaired, the Defendants again offered to sell the Vehicle to the Plaintiff(s) with price incentives and extended warranties.  Ultimately, the Vehicle was sold to a third party who was never informed of the true defect in the Vehicle and to aide in the "cover-up" the Defendants purposefully misreported to third parties the true nature of the defect and hid the repairs within their exclusive dealer communication network.  All of these violations are part of a widespread criminal *enterprise* engaged in a *pattern of racketeering activity* across State lines, and a conspiracy to engage in *racketeering activity* involving numerous RICO predicate acts during the past ten (10) calendar years.

The Defendant Vehicle in this complaint is **NOT ONE** of the Vehicles in question in the MDL class litigation nor was in manufactured during the time period referenced in the MDL class litigation.  The causation of the deployment is significantly different as well.

The MDL class litigation primarily deals with the non deployment of airbags from a faulty ignition switch.  Document number 266 in the MDL No. 2543 filed on June 6, 2014, the panel stated that:

> Each of the actions currently before the Panel asserts economic damages on behalf of certain classes and/or individuals stemming from an alleged defect in certain General Motors vehicles that causes the vehicle's ignition switch to move

---

[1] A claim was submitted to Kenneth R. Feinburg (Administrator of the GM Ignition Compensation Claims Resolution Facility) designated  within the required time limits and his offices replied stating that this matter did not qualify under the guidelines for the General Motors Ignition Switch Settlement fund.

unintentionally from the "run" position to the "accessory" or "off" position, resulting in a loss of power, vehicle speed control, and braking, as well as a failure of the vehicle's airbags to deploy. **[In this litigation, the airbags deployed – language added.]**

This case is substantially distinct in nature than the defect alleged in the initial "related 74 actions" in that it does not allege ANY of the facts cited in ANY of those cases.  All of the alleged Vehicles in the related actions and "tag-along" actions *are not of the same model* as the Defendant Vehicle in this action.

To assist the Court in understanding this complaint and not changing it to any of the combined litigations like the MDL matter, here is a short summary of the facts in this matter:

The Plaintiff(s) purchased the Vehicle on Saturday, August 3, 2013, several years after General Motors emerged from Bankruptcy and the "New GM" was formed.  Two days after and with less than 430 miles on the Vehicle, on August 5, 2013, the electrical system in the Vehicle failed, causing the lights inside the Vehicle to "flicker on-and-off", with the driver of the vehicle not being able to steer the Vehicle for a brief moment, the passenger side airbag prematurely deployed, causing injury to the Plaintiff(s).  After the deployment, General Motors cancelled the sales contract for the sale of the Vehicle.  General Motors then took possession of the Vehicle and repaired the damage to the Vehicle caused by the premature airbag deployment.  Then, the Plaintiff(s) were again offered to purchase the Vehicle at a discount, to which they declined.  It is unclear, but it is suspected, that the airbags again deployed while in the possession of General Motors after the first repair.

Subsequently, the selling dealership "sub-let" the Vehicle from General Motors to authorize a second repair of the Vehicle under "warranty".  During the second repair of the Vehicle in less than thirty days, the Defendant(s) replaced multiple sensors, the SDM module, other parts and reprogrammed the Vehicle's computer.  **At no time was the ignition switch replaced or repaired on any work order in the possession of the Plaintiff(s) at this time**.  It is unknown if the ignition switch caused the premature deployment, but it is alleged in the

complaint as a possible causation to overcome the burden of a complaint that meets a causation issue (Federal Rules of Procedure).

After the repair, the repairing dealership was told by General Motors to destroy the evidence while it knew there was a *pending claim* for personal injuries (this destruction of evidence also violates basic rules of litigation as seen in other cases, to wit, as soon as a potential claim is identified, a litigant is under a duty to preserve evidence which it knows or reasonably should know is relevant to the action. In re Napster, Inc. Copyright Litig., 462 F. Supp. 2d 1060, 1067 (N.D. Cal. 2006). "Once a party reasonably anticipates litigation, it must suspend its routine document retention/destruction policy and put in place a 'litigation hold' to ensure the preservation of relevant documents." Apple Inc. v. Samsung Electronics Co., 888 F. Supp. 2d 976, 991 (N.D. Cal. 2012). All of which will become part of this litigation after discovery requests have been issued and a final determination has been made who authorized the destruction of said evidence.  Once the repairs were made, the true nature of the actual repairs were intentionally undocumented, apparently concealing the true nature of repairs to other dealerships  making it almost impossible to discover the true defect in the vehicle; further, there was a fraudulent reporting of the repairs to a third party(s).

The manufacturer of the subject airbags in this litigation were not manufactured by Takata Corporation, which is also subject to several litigations regarding premature or non-deployment of airbags in several General Motors Vehicles and this litigation is NOT PART of the TAKATA Litigation either.  The failure of equipment produced by Defendant DELPHI is another difference in this litigation than that of the TAKATA and MDL SWITCH Litigations.

This action is also a personal injury action, whereby the Plaintiff(s) have suffered severe damages as a result of the defect in the Vehicle.  The facts pleaded in the complaint were done so to show a distinct pattern of activity to which the Defendant(s) have been involved in the past.

Since categorizing this action with the other MDL litigation specifically will allow the Defendant(s) to hide behind the other actions against them and the Plaintiff(s) will not be able to present their case independently from the other litigants the Plaintiff(s) are greatly prejudiced by wrongful inclusion in same.  For example, the selling and repairing dealership participation in

the fraudulent activity and the spoliation of the evidence makes this case a singular matter. Any fact finder, or jury, would be lost in the issues of this complaint as related to the other *MDL matters,* because it does not "fit."

The Plaintiffs are bringing this complaint as <u>individuals</u> and <u>not as a Class Group</u> as the activities surrounding the incident are so specific that they warrant separate evidentiary hearings regarding the willful misconduct of the Defendants.  The Plaintiffs **OBJECT** to be included in any similar litigation or cross litigation at the time of the filing of this complaint, specifically the *MDL Switch Litigation*.

## I.
## GENERAL ALLEGATIONS – JURISDICTION

1. That Plaintiff SUSAN E. HAMMATT is an individual who resides in the County of Riverside, State of California, at all relevant times;

2. That Plaintiff CHRISTOPHER S. HAMMATT is an individual who resides in the County of Riverside, State of California, at all relevant times;

3. That SUSAN E. HAMMATT, is an individual who resides in the County of Riverside, State of California and SPOUSE and CONSERVATOR of CHRISTOPHER S. HAMMATT, and is filing such COMPLAINT on his behalf;

4. The Plaintiff(s) are not members of a CLASS nor do they intend by the filing of this suit on being joined into a CLASS;

5. The injuries alleged in this Complaint are specific to the Vehicle (defined below in the body of the Complaint) and are specific to a single event that occurred on August 5, 2013;

6. The injuries alleged in this Complaint occurred within the City of MURRIETA, County of RIVERSIDE, State of CALIFORNIA;

7. Plaintiff (s) is/are informed and believe(s) and on that basis allege(s) that defendants GENERAL MOTORS and GENERAL MOTORS COMPANY, A Delaware Company (collectively, "GENERAL MOTORS") are corporations and were corporations duly organized and existing under the laws of a state of the United States, or of another country, but doing business in and availing themselves of the laws of the State of California, County

of Riverside in business directly related to the exact mechanism of injury alleged in this lawsuit;

8.  On information and  belief Defendant General Motors LLC ("New GM") is a Delaware limited liability company with its principal place of business located at 300 Renaissance Center, Detroit, Michigan, and is a citizen of the States of Delaware and Michigan;

9.  On information and  belief Defendant General Motors LLC ("New GM") assumed all trade secrets, responsibilities and designs from Old GM after 2009 and was privileged to all knowledge of Old GM;

10. On information and  belief The sole member and owner of General Motors LLC is General Motors Holding LLC;

11. On information and  belief General Motors Holdings LLC is a Delaware limited liability company with its principal place of business in the State of Michigan;

12.  On information and  belief The sole member and owner of General Motors Holdings LLC is General Motors Company, which is a Delaware Corporation with its principal place of business in the State of Michigan, and is a citizen of the States of Delaware and Michigan;

13. On information and  belief New GM was incorporated in 2009 and, effective on July 11, 2009, acquired substantially all assets and assumed certain liabilities of General Motors Corporation ("Old GM") through a Section 363 sale under Chapter 11 of the U.S. Bankruptcy Code;

14. Plaintiff (s) is/are informed and believe(s) the General Motors may be served at: CORPORATION SERVICE COMPANY (CSC-LAWYERS) (C1592199)  The Prentice-Hall Corporation System, Inc. – 2710 Gateway Oaks Drive, Ste 150 N, Sacramento, CA 95883 and had been informed by its representative(s)

15. Plaintiff (s) is/are informed and believe(s) and on that basis alleges that defendants CHEVROLET DIVISION OF GENERAL MOTORS d/b/a CHEVROLET (collectively, "CHEVROLET") are corporations and were corporations duly organized and existing under the laws of a state of the United States, or of another country, but doing business in

and availing themselves of the laws of the State of California, County of Riverside in business directly related to the exact mechanism of injury alleged in this lawsuit;

16. Plaintiff (s) is/are informed and believe(s) on that basis alleges that defendants JIMMIE JOHNSON KEARNY MESA CHEVROLET and JIMMIE JOHNSON CHEVROLET (collectively, "JIMMIE JOHNSON") are corporations and were corporations duly organized and existing under the laws of a state of the United States, or of another country, but doing business in and availing themselves of the laws of the State of California, County of Riverside in business directly related to the exact mechanism of injury alleged in this lawsuit;

17. Plaintiff (s) is/are informed and believe(s) on that basis alleges that defendants , SELECT AUTOMOTIVE HOLDINGS, INC. (collectively, "SELECT") are corporations and were corporations duly organized and existing under the laws of a state of the United States, or of another country, but doing business in and availing themselves of the laws of the State of California, County of Riverside in business directly related to the exact mechanism of injury alleged in this lawsuit;

18. Plaintiff (s) is/are informed and believe(s) on that basis alleges that defendants HENDRICK CO AUTOMOTIVE,LLC, AND HENDRICK AUTOMOTIVE GROUP (collectively, "HENDRICK") are corporations and were corporations duly organized and existing under the laws of a state of the United States, or of another country, but doing business in and availing themselves of the laws of the State of California, County of Riverside in business directly related to the exact mechanism of injury alleged in this lawsuit;

19.  On information and belief Defendant AUTOLIV, Inc. is a Delaware Corporation, with its headquarters in Stockholm, Sweden.  Further, AUTOLIV has a California Location, doing business is California at 420 South Fairview, Goleta, California, 93117 and does business throughout the United States of America, including the State of California, for profit;

20. On information and  belief at the time of the occurrence of the events herein and make the basis of the action and for sometime prior thereto, AUTOLIV, Inc. was in the business of

designing, manufacturing, testing, marketing, distributing and/or selling airbags including the side airbags in the Vehicle identified below (the "subject airbag") in the 2014 Chevrolet Cruze involved in the incident made the basis of this complaint, in this state and judicial district;

21. On information and belief Defendants AUTOLIV, Inc., AUTOLIV, Inc. and AUTOLIV, Inc. will hereinafter collectively be referred to as "AUTOLIV".

22. On information and belief Defendant AUTOLIV, Inc. can be served with process at: CORPORATION SERVICE COMPANY (CSC-LAWYERS) (C1592199)  The Prentice-Hall Corporation System, Inc. – 2710 Gateway Oaks Drive, Ste 150 N, Sacramento, CA 95883 and had been informed by its representative(s);

23. On information and belief Defendant DELPHI Automotive PLC is an automotive parts manufacturing company headquartered in Gillingham, Kent, UK. It is one of the world's largest automotive parts manufacturers and has approximately 161,000 employees, of whom around 5,000 are in the United States;

24. On information and belief Defendant DELPHI, Inc. ("DELPHI") is a Delaware Corporation, with its principal place of business in Troy, Michigan, and does business throughout the United States, including the State of California, for profit;

25. On information and belief at the time of the occurrence made the basis of this action and for sometime prior thereto, Defendant DELPHI was qualified to do business and solicited for sale and sold, designed, manufactured, tested, marketed, and/or distributed electronic sensors, control modules and other parts that controlled the subject airbag in the 2014Chevrolet Cruze, involved in the incident made the basis of this Complaint, in this state and judicial district;

26. On information and belief Defendant DELPHI, Inc. has an agent for service of process upon which service can be had, to wit: Corporation Service Company, 2710 Gateway Oaks Drive, Suite 150N, Sacramento, California;

27. On information and belief Defendant DELPHI is a foreign corporation with operations in the State of California, to wit, Delphi Labs in Mountain View, California.

28. The Plaintiff(s) is/are informed and believe(s), and thereon allege(s), that all Defendant(s) sued herein as DOES 1 through 50 are in some manner responsible for the acts herein alleged and reserve the right to amend such complaint to name said Defendant(s), and each of them, when it becomes necessary or their true identity revealed;

29.  The Plaintiff(s) is/are informed and believe(s), and thereon allege(s), the Conservatorship of Christopher S. Hammatt was brought in Riverside County, California and the situs of said case is necessary for oversight of this claim against any and all Defendant(s), and each of them.

30. The Plaintiff(s) is/are informed and believe(s), and thereon allege(s), and on such information and belief alleges that the Vehicle, which is a basis of this complaint, is a Vehicle which likely is commonly known as a 2014 Chevrolet Cruze  Diesel Vehicle ID# 1G1P75SZ3E7123155 sold in San Diego, California on August 3, 2013 to ROBERT W. HAMMATT, M.D. (hereinafter known as the  "Vehicle");

31. The Plaintiff(s) is/are informed and believe(s), and thereon allege(s), that the Vehicle was registered in the name of and owned by ROBERT W. HAMMATT at the relevant time of the incident;

32.  That The Plaintiff(s) is/are informed and believe(s), and thereon allege(s), and on such information and belief alleges that Plaintiff  SUSAN E. HAMMATT at all relevant times was driving the aforementioned  vehicle owned by ROBERT W. HAMMATT;

33.  The Plaintiff(s) is/are informed and believe(s), and thereon allege(s), that Defendant(s), and each of them, were and are the agents, servants, representatives, and/or employees of each of the other Defendant(s) herein, and were at all times acting within the course and scope of such agency, representation and employment and with the permission and consent of each of said Defendant(s);

34. The Plaintiff(s) is/are informed and believe(s), and thereon allege(s), wherever appearing in this complaint, each and every reference to Defendant(s) and to any of them, is intended to be and shall be a reference to all Defendant(s) hereto, and to each of them, named and

unnamed, including all fictitiously named Defendant(s), unless said reference is otherwise specifically qualified;

35. The Plaintiff(s) are informed and believes, and thereon alleges, that each of the DOE Defendant(s) is, in some manner, responsible for the events and happenings herein set forth and proximately caused injury and damages to The PLAINTIFF(s) as herein alleged;

36. The Plaintiff(s) is/are informed and believe(s), and thereon allege(s), that the true names and capacities, whether individual, corporate, associate or otherwise of Defendants named herein as DOES 1 through 50, inclusive, are unknown to Plaintiffs who, therefore, sues said Defendants by such fictitious names, and Plaintiffs will ask leave of Court to amend this Complaint when their true names and capacities have been ascertained.  Plaintiffs are informed and believe and thereon allege, that each of the Defendants designated as a DOE is responsible, negligently, or in some actionable manner for the events, and happenings herein referred to and caused the injuries and damages proximately thereby to Plaintiffs as herein allege either through Defendants' own negligent conduct or through the conduct of its agents, servants, and/or employees, or, through the ownership, lease, sale of the instrumentality causing the injury or in some other actionable manner;

37. The Plaintiff(s) is/are informed and believe(s), and thereon allege(s), that at all times herein mentioned each of the Defendants was authorized and empowered by each of the remaining Defendants to, and did, act as the agents and/or employees of defendants and each and all of the things herein alleged to have been done by them were done in the capacity of and as said agents or said Defendant(s) was a builder, designer, manufacturer, repairing party, passenger, driver, or claimant of said named Defendant(s) or were employer(s) of same and was acting at all times within the course and scope of that agency and/or employment and with the knowledge and consent of the remaining defendant(s) and each of them;

38. The Plaintiff(s) is/are informed and believe(s), and thereon allege(s), that each of the defendants designated herein as a DOE is in some way negligently and/or otherwise legally responsible for the events and happenings herein referred to, and negligently and/or otherwise illegally caused damages proximately thereby to Plaintiffs as herein alleged;

39. All Defendant(s), and each of them, conducted Business within the State of California, County of Riverside and/or benefited from the sale of their products for profit within the State of California, County of Riverside;

## II.

## <u>VENUE</u>

40. Plaintiff hereby incorporates in the preceding paragraphs by this reference information contained and the allegations contained in Paragraphs 1 through 39 as though set forth fully at this point, and each and every part thereof with the same force and effect as if set forth herein at length;

41. Venue is proper under 28 U.S.C. § 1391 because a substantial part of the events or property giving rise to the claim occurred in this judicial District, and has caused damages to Plaintiff(s) in this District;

42. The Airbag Deployment (hereinafter "the airbag deployment" or "premature deployment" or "the deployment" or the "incident") occurred in the City of Murrieta, County of Riverside, State of California, on August 5, 2013, which caused the injuries to the Plaintiff(s);

43. Law enforcement and Emergency Services were summoned to the scene of the incident in the State of California, City of Murrieta, in the County of Riverside and were employed by the City of Murrieta, California;

44. Venue is proper because Plaintiff(s) are a resident of the City of Murrieta, County of Riverside, State of California;

45. Plaintiff(s) are currently residing in the City of Murrieta, County of Riverside, State of California;

46. Plaintiff(s) own real property in Murrieta, California which is where they were residing at the time of the incident;

47.  This Court has diversity jurisdiction over the claims in this complaint because the amount in controversy exceeds the sum of $75,000.00 and is between citizens of different states. 28 U.S.C. §1332(a)(1);

48. Venue is appropriate pursuant to California <u>CODE OF CIVIL PROCEDURE</u> §§ 392-403;

49. This Court has Jurisdiction over all the Defendant(s), and each of them pursuant to: <u>Hess v. Pawlowski</u> (1927), 274 U.S. 352, 47 S. Ct. 632, 71 L. Ed. 1091 (minimum contacts within the state);

50. Plaintiff(s) contend that this Court has Jurisdiction because This U.S. District Court has jurisdiction under 28 USC §1331 because Plaintiffs complain under 18 USC §1961, *et seq.* (civil-RICO);

### III.

### <u>BACKGROUND FACTS AND INFORMATION</u>

51. Plaintiff hereby incorporates in the preceding paragraphs by this reference information contained and the allegations contained in Paragraphs 1 through 50 as though set forth fully at this point, and each and every part thereof with the same force and effect as if set forth herein at length;

52. The Plaintiff(s) is/are informed and believe(s), and thereon allege(s), are sometime prior to July 30, 2013, the Defendant(s), and each of them, specifically, the Defendant General Motors and Defendant Chevrolet, caused the manufacture of all or part of the Vehicle identified above in Paragraph #29;

53. The Plaintiff(s) is/are informed and believe(s), and thereon allege(s),that the Vehicle's final assembly point was Lordstown, Ohio;

54. The Plaintiff(s) is/are informed and believe(s), and thereon allege(s),that the engine was manufactured in Germany;

55. The Plaintiff(s) is/are informed and believe(s), and thereon allege(s),that the transmission was manufactured in Japan;

56. The Plaintiff(s) is/are informed and believe(s), and thereon allege(s), that the Vehicle contained certain parts content from the United States and/or Canada at an amount of fifty percent (50%);

57. The Plaintiff(s) is/are informed and believe(s), and thereon allege(s),that the Vehicle was delivered to Jimmie Johnson Kearny Mesa Chevrolet, dealer number 20264, on or before July 31, 2013;

58. The Plaintiff(s) is/are informed and believe(s), and thereon allege(s),that the Defendant(s), and each of them, specifically, JIMMIE JOHNSON, SELECT and HENDRICK, modified said Vehicle at the dealership prior to it being listed for sale on or about August 2, 2013;

59. On or about August 3, 2013, Plaintiff(s), all of them, travelled to Defendant(s), and each of them, place of business located at 7978 Balboa Avenue, San Diego, California to "test drive" said Vehicle (commonly known as "Kearny Mesa Chevrolet);

60. On or about August 3, 2013, the Defendant(s), and each of them, offered the Vehicle for sale to the general public;

61. The Plaintiff(s) is/are informed and believe(s), and thereon allege(s), that on or about August 3, 2013, the Defendant(s), and each of them, sold the Vehicle to ROBERT W. HAMMATT via an installment purchase agreement;

62. The Plaintiff(s) is/are informed and believe(s), and thereon allege(s),that the Vehicle was sold to the Plaintiff(s) with a manufacturer's warranty;

63. The Plaintiff(s) is/are informed and believe(s), and thereon allege(s),that ROBERT W. HAMMATT, purchased an extended warranty, offered for sale by the Defendant(s), and each of them, and included the purchase price of the Warranty in the installment purchase agreement;

64. The Plaintiff(s) is/are informed and believe(s), and thereon allege(s), on or about August 5, 2013 at or approximately at 20:40 hours, without notice nor without purpose, that the Passenger Side Airbag deployed on the Vehicle;

65. The Plaintiff(s) is/are informed and believe(s), and thereon allege(s), on or about August 5, 2013 at or approximately 2 to 3 seconds after the Passenger Side Airbag deployed, the Driver's side airbag deployed;

66. The Plaintiff(s) is/are informed and believe(s), and thereon allege(s), that only the "side-curtain" airbags deployed at the time of the incident and no other airbags deployed;

67. The Plaintiff(s) is/are informed and believe(s), and thereon allege(s), that at/or about the same moment of the Passenger Side Airbag deployed, both the Driver's side and Passenger Side "seat belt pretensioners" retracted in a forceful fashion;

68. The Plaintiff, Mrs. Susan Hammatt, was the driver of the Vehicle at the time of the Deployment;

69. The Plaintiff, Christopher S. Hammatt, was a passenger in the Front Passenger Seat of the vehicle, and at the time of the premature airbag deployment ("the incident") was resting his head on the vertical pillar between the front passenger door and the rear passenger door;

70. The Plaintiff(s) is/are informed and believe(s), and thereon allege(s),that at the time of the incident the Airbag Sensor is located in the Vertical Support Beam between the front passenger door and rear passenger door, which is the same general area that the Plaintiff, Christopher S. Hammatt, was resting;

71. The Plaintiff(s) is/are informed and believe(s), and thereon allege(s),at the time of the incident, that the Vehicle was traveling West Bound on Nutmeg Road, in the City of Murrieta;

72. The Plaintiff(s) is/are informed and believe(s), and thereon allege(s),that the "On Star" is the benchmark for in-vehicle safety, security, communication and convenience services is owned and operated by the Defendant(s) and each of them;

73. The Plaintiff(s) is/are informed and believe(s), and thereon allege(s), at the time of the incident that the Vehicle had "On Star" and was equipped with the "On Star" service;

74. The Plaintiff(s) is/are informed and believe(s), and thereon allege(s),that immediately after the Airbag Deployment an "On Star" advisor contacted the Plaintiff Susan E. Hammatt and the Plaintiff Christopher S. Hammatt;

75. The Plaintiff(s) is/are informed and believe(s), and thereon allege(s),that the "On Star" advisor stated to the occupants that they were involved in a serious accident and asked if the occupants needed medical attention;

76. The Plaintiff(s) is/are informed and believe(s), and thereon allege(s),that the "On Star" Advisor then contacted Emergency Medical Services;

77. The Plaintiff(s) is/are informed and believe(s), and thereon allege(s),that Plaintiff Christopher S. Hammatt needed medical attention "on scene";

78. The Plaintiff(s) is/are informed and believe(s), and thereon allege(s),at the time of the incident the Murrieta Police Department was dispatched to the scene of the incident;

79. The Plaintiff(s) is/are informed and believe(s), and thereon allege(s),that the Murrieta Police Department determined that there was no Traffic Collision and that the Vehicle *malfunctioned* for unknown reasons as it had less than 500 Miles on it, there were no signs of any collision and the vehicle was not damaged in any way, other than the damage from the Airbags and reported as such in their official reports;

80. The Plaintiff(s) is/are informed and believe(s), and thereon allege(s),simultaneously and at the time of the incident, that the Murrieta Fire Department was dispatched to the scene of the incident;

81. The Plaintiff(s) is/are informed and believe(s), and thereon allege(s),that the Murrieta Fire Department attended to the injuries of the Plaintiff, Christopher S. Hammatt, and ordered him transported via Emergency Service pursuant to California Vehicle Code Section 20016;

82. Plaintiff Christopher Hammatt lost consciousness as a result of the incident twice during the period of time from the deployment prior to transportation via ambulance to Rancho Springs Medical Center;

83. Plaintiff Christopher Hammatt suffered injuries tantamount to Great Bodily Injury;

84. The Plaintiff(s) is/are informed and believe(s), and thereon allege(s),that the injury was a result of the Airbag Deployment;

85. Plaintiff Christopher Hammatt suffered a TRAUMATIC BRAIN INJURY (hereinafter "TBI") as a result of being hit in the head from the Airbag Deployment;

86. Plaintiff Christopher Hammatt suffered other injuries than the TBI as a result of the airbag deployment;

87. Plaintiff Susan E. Hammatt suffered separate injuries tantamount to Great Bodily Injury as a result of the Airbag Deployment;

88. The Plaintiff(s) is/are informed and believe(s), and thereon allege(s),that according to the Center for Disease Control, Automobile Accidents are the causation of more than thirty percent (30%) of all TBI's that result in a death;

89. The Plaintiff(s) is/are informed and believe(s), and thereon allege(s),that according to Association for the Advancement of Automotive Medicine, more than 24.8% of Moderate to Significant TBI's were a result of contact with a side airbag;

90. Prior to the airbag deployment, the Plaintiff, Mr. Christopher S. Hammatt, was not suffering from a TBI and his cognitive ability dramatically reduced, after the incident, which is one of the basis for this complaint;

91. As a result of the TBI, the Plaintiff, Christopher S. Hammatt, needed a conservatorship because of his medical condition;

92. As a result of the TBI, the Plaintiff, Christopher S. Hammatt, was place on Inactive Enrollment pursuant to California Business and Professions Code section 6007, subdivision (b)(3) (Medically Incompetent to Practice Law as a member of the California State Bar); (see EXHIBIT A – order from State Bar of California);

93. Plaintiff(s) are informed and allege that the force of the airbag also caused singular optical injury related papilledema in the right eye of the Plaintiff, Christopher S. Hammatt;

94. Prior to this incident, Plaintiff Christopher S. Hammatt was a PADI NITROX Certified Diver, who was medically cleared to dive to a depth of 90 feet or 3 atmospheres. As a result of the injury, the Plaintiff may never dive again;

95. Prior to this incident, Plaintiff Christopher S. Hammatt actively participated in "amusement parks" with his children and they possessed annual passes to parks such as "Six Flags" whereby they would ride roller coasters. As a result of the injury, the Plaintiff Christopher

S. Hammatt may never ride a roller coaster again for fear of separation of the optic never and going blind in the right eye;

96.   As a result of the Optical Papilledema, it is uncertain if the Plaintiff, Christopher S. Hammatt may be able to travel via commercial aircraft due to the pressurization may cause the optic nerve to separate causing blindness in his right eye;

97.  Plaintiff, Christopher S. Hammatt, was the sole "breadwinner" for the family;

98.  The Plaintiff(s) is/are informed and believe(s), and thereon allege(s), that in the year prior to the TBI, the Plaintiff, Christopher S. Hammatt, was earning in excess of $200,000 per year in income;

99.  The Plaintiff(s) is/are informed and believe(s), and thereon allege(s),that the Plaintiff Christopher S. Hammatt,  would be able to have continued working for a minimum of twenty-five (25) years of work ability at the time of the TBI;

100. The Plaintiff(s) is/are informed and believe(s), and thereon allege(s),that the Plaintiff, Susan E. Hammatt, was the homemaker for the family and was forced to close the law practice of Plaintiff Christopher S. Hammatt, as a result of the TBI;

101. The Plaintiff(s) is/are informed and believe(s), and thereon allege(s),that the Plaintiff, Susan E. Hammatt, has lost the Consortium of her husband, she has lost the father to their children, and she has lost the income earned by Plaintiff Christopher S. Hammatt;

102. The Plaintiff(s) is/are informed and believe(s), and thereon allege(s),that the Plaintiff, Christopher S. Hammatt, can no longer work as a result of the TBI;

103. The Plaintiff(s) is/are informed and believe(s), and thereon allege(s),that the Plaintiff, Christopher S. Hammatt, needs a "Baby Sitter" at all times as he suffers from scattered thoughts, amnesia, depression and deterioration of his physical capabilities, as reported by several attending physicians;

104. As a result of the TBI, Plaintiff, Christopher S. Hammatt, has had significant issues with his continence and has had several accidental discharges;

105. The Plaintiff(s) is/are informed and believe(s), and thereon allege(s),that the Plaintiff, Christopher S. Hammatt, is confined to his bedroom nearly seventy-percent of the time, as

his is unable to be with his family nor out in public, for extended periods of time, as a result of his TBI;

106. Plaintiff CHRISTOPHER S. HAMMATT, suffered severe emotional distress as a result of the Malfunction of the Vehicle his father had purchased, destroying his career and financial life;

107. That Plaintiffs are informed and believe, and thereon allege that Plaintiff was a passenger in the Vehicle without any act or omission contributing to a collision and that the occupants were wearing their seat belts, harnesses and restraints, and they have suffered severe emotional distress as a result of the premature airbag deployment;

108. The Plaintiff(s) is/are informed and believe(s), and thereon allege(s), that on or about August 20, 2013, the Defendant(s), and each of them, sent a vehicle inspector to the residence of the Plaintiff(s) to inspect the Vehicle;

109. The Plaintiff(s) is/are informed and believe(s), and thereon allege(s), that the data from the Vehicle's computer was downloaded and a report was generated;

110. The Plaintiff(s) is/are informed and believe(s), and thereon allege(s), that the a Crash Data Report (CDR) was generated and printed and mailed to the Plaintiff(s);

111. The Plaintiff(s) is/are informed and believe(s), and thereon allege(s), that the report demonstrates that the Vehicle was experiencing a "Clockwise Rotation" roll rate.  Such roll rate was commonly referred to a "Roll Over Event";

112. The Plaintiff(s) is/are informed and believe(s), and thereon allege(s), that the Vehicle also recorded data that showed that the Vehicle slowed to a normal stop after the Deployment of the Airbags;

113. The Plaintiff(s) is/are informed and believe(s), and thereon allege(s), that there was no physical damage to the EXTERIOR of the Vehicle (see EXHIBIT B – photographs of the Vehicle);

114. The Plaintiff(s) is/are informed and believe(s), and thereon allege(s), that there were no signs of a "Roll Over Event" on the roadway, such as skid marks, pieces of the vehicle or witness testimony;

115.  The Plaintiff(s) is/are informed and believe(s), and thereon allege(s),that the "Roll Over Event" recorded by the vehicle's data sensor showed that the Vehicle "rolled over" and landed right "side up" and slowed to a normal stop moving in a linear direction, identical to the direction the vehicle was traveling;

116.  The Plaintiff(s) is/are informed and believe(s), and thereon allege(s),that the "Roll Over Event" recorded by the vehicle's data sensor showed that the Vehicle "rolled over" and turned "upright" in less than 0.8 seconds (meaning that the car rolled over and landed on all four wheels in the same direction of travel in less than 1 second);

117.  The Plaintiff(s) is/are informed and believe(s), and thereon allege(s),that the event recorded on the Vehicle's Data Recorder malfunctioned as it recorded physically impossible results;

118.  The Plaintiff(s) is/are informed and believe(s), and thereon allege(s), that moments prior to the premature airbag deployment, that the lights inside the vehicle "flickered" on an off;

119.  The Plaintiff(s) is/are informed and believe(s), and thereon allege(s), that moments prior to the premature airbag deployment that the steering wheel locked and control of the vehicle was lost as if the ignition key had been "turned off" momentarily;

120.  The Plaintiff(s) is/are informed and believe(s), and thereon allege(s), that during the premature airbag deployment that the car sounded like it restarted itself and control was given back to the driver, Plaintiff, Susan E. Hammatt, allowing her to stop the vehicle in a safe fashion;

121.  The Plaintiff(s) is/are informed and believe(s), and thereon allege(s), that there was a "Safety System Failure" as result of, but not limited to, a series of defective components and/or unsafe installation of said components and/or the failure of components to act in concert with one another, so as, to cause, a complete system failure (hereinafter referred to as a "Safety System Failure");

122.  The Plaintiff(s) is/are informed and believe(s), and thereon allege(s), that the Safety System Failure was a result of, but not limited to, known airbag sensor defects, and/or ground fault defects, and/or ignition switch failures, and/or design defects, and/or faulty

computer parameter programming, and/or installation defects and/or other defects known or unknown at this time;

123.  The Plaintiff(s) is/are informed and believe(s), and thereon allege(s),that ROBERT W. HAMMATT's Insurance Company at the time of the incident, USAA, made an inspection of the damage to the Vehicle and determined that there was no coverage for the claim to repair the Vehicle as the adjuster determined that the damage to the Vehicle was caused by a Manufacturer Defect;

124.  The Plaintiff(s) is/are informed and believe(s), and thereon allege(s),that USAA denied any liability for Personal Injury Damages under claim number 1022994 because liability for said claim belonged to the manufacturer of said Vehicle;

125.  The Plaintiff(s) is/are informed and believe(s), and thereon allege(s),that the Defendant(s), and each of them, cancelled the Sale contract for the Vehicle; (see EXHIBIT C – cancellation of contract);

126.  The Plaintiff(s) is/are informed and believe(s), and thereon allege(s),that the Vehicle was towed to the Defendant(s), and each of them, dealership in Kearny Mesa San Diego;

127.  The Plaintiff(s) received a communication from the Defendant(s), and each of them, that The Plaintiff(s) is/are informed and believe(s), and thereon allege(s),that the Defendant(s), and each of them, would repair the Vehicle at their cost;

128.  The Plaintiff(s) is/are informed and believe(s), and thereon allege(s),that the Defendant(s), and each of them, offered to pay all medical expenses of the Plaintiff(s), and each of them;

129.  The Plaintiff(s) is/are informed and believe(s), and thereon allege(s),that the Defendant(s), and each of them, admitted that the Vehicle malfunctioned and needed to be repaired;

130.  The Plaintiff(s) is/are informed and believe(s), and thereon allege(s),that the Defendant(s), and each of them, accepted responsibility for their actions and the defect in the Vehicle by their actions;

131.  The Plaintiff(s) is/are informed and believe(s), and thereon allege(s),that once a resolution had been reached to repair the Vehicle, that the dealership, and the Defendant(s), and each of them, asked ROBERT W. HAMMATT, to drive to the Dealership and sign a new sale agreement;

132.  The Plaintiff(s) is/are informed and believe(s), and thereon allege(s),that the Defendant(s), and each of them, offered ROBERT W. HAMMATT financial incentives to sign a new contract to repurchase the defective Vehicle in this complaint;

133.  The Plaintiff(s) is/are informed and believe(s), and thereon allege(s),that the financial incentives were a result of a savings of thousand(s) of dollars in finance charges, discounts to the vehicle and warranty savings;

134.  ROBERT W. HAMMATT, declined and told the Dealership to "come get" the Vehicle in Murrieta, California, at the residence of the Plaintiff(s);

135.  The Plaintiff(s) is/are informed and believe(s), and thereon allege(s),that the on or about September 19, 2013, the Defendant(s), and each of them, towed the Vehicle to the Dealership in Kearny Mesa, California;

136.  The Plaintiff(s) is/are informed and believe(s), and thereon allege(s),that the Defendant, Kearny Mesa Chevrolet, took title to the Vehicle in its name for purposes of hiding the details of the repair to Vehicle; (see EXHIBIT D – CarFAX Report);

137.  The Plaintiff(s) is/are informed and believe(s), and thereon allege(s),that the Vehicle was repaired as a individual owner, through a sublet, under warranty, which means at no cost to the dealership, but rather to the Manufacturer of the Vehicle;

138.  The Plaintiff(s) is/are informed and believe(s), and thereon allege(s),that the on October 17, 2013, the Defendant(s), and each of them, repaired the Vehicle at the Dealership, at a profit to the dealership as the repair was recorded as warranty repairs;

139.  The Plaintiff(s) is/are informed and believe(s), and thereon allege(s),that the Defendant(s), and each of them, specifically General Motors, issued an internal claim number for the repair, referenced in the repair order, authorized the repair and paid for said repairs to the vehicle;

140. The Plaintiff(s) is/are informed and believe(s), and thereon allege(s),that the damage to the Vehicle from the deployment of the airbags was repaired and that this was the only damage to the Vehicle;

141. The Plaintiff(s) is/are informed and believe(s), and thereon allege(s),that the Defendant(s), and each of them, removed and replaced both the FRONT DISCRIMINATING SENSORS, both FRONT and SIDE IMPACT SENSORS, and the SENSING DIAGNOSTIC MODULE (SDM) in the Vehicle;

142. The Plaintiff(s) is/are informed and believe(s), and thereon allege(s),that the Defendant(s), and each of them, removed and replaced both Seatbelt Tensioner Modules for the right and left side of the Vehicle;

143. The Plaintiff(s) is/are informed and believe(s), and thereon allege(s),that the Defendant(s), and each of them, purposely destroyed the replaced parts, making it impossible for the Plaintiff(s) to test the SENSORS and MODULES for defects and/or damage;

144. The Plaintiff(s) is/are informed and believe(s), and thereon allege(s),that that the Defendant(s), and each of them, participated in a conspiracy of fraudulent activities, to disguise the true defect of the Vehicle and concealed all evidence of the defect;

145. The Plaintiff(s) is/are informed and believe(s), and thereon allege(s),that the destruction of the replaced parts was done to "cover up" the true mechanical defect in the Vehicle which is the basis for this claim;

146. The Plaintiff(s) is/are informed and believe(s), and thereon allege(s),that the Vehicle had no other Damage, other than that which was repaired as part of the Airbag Deployment;

147. The Plaintiff(s) is/are informed and believe(s), and thereon allege(s),that the Defendant(s), and each of them, made no other repairs on the Vehicle before it was sold again to a third party;

148. After the repairs to the Vehicle, the Defendant(s), and each of them conducted a "buy back" from the manufacturer pursuant to California Code (California Civil Code Section 1793.22(b).;

149. The Plaintiff(s) is/are informed and believe(s), and thereon allege(s),that the Defendant(s), and each of them, are known to have concealed defects to their other vehicles in the recent past;

150. The Plaintiff(s) is/are informed and believe(s), and thereon allege(s),that the previous defects in the Defendant(s) Vehicles include, but are not limited to: Grounding Issues, Poor Sensor Placement, Airbag Defects, Drive Shaft Defects, and Ignition Switch Failures;

151. The Plaintiff(s) is/are informed and believe(s), and thereon allege(s),that the Engineers from the Defendant(s), and each of them, from the Technical Assistance Center (TAC department),  specifically Doug Deal and Robert Bennet, advised the servicing technical repairperson to replace the above identified sensors; (see EXHIBIT E – repair order and technical notes);

152. The Plaintiff(s) is/are informed and believe(s), and thereon allege(s),that the Engineers from the Defendant(s), and each of them, knowing that a claim existed for a product malfunction, advised the technical repair person to "throw away" and/or destroy the replaced sensors;

153. The Plaintiff(s) is/are informed and believe(s), and thereon allege(s),that the Manufacturer, General Motors, named herein as a Defendant, took possession of the Vehicle to further conceal the true defect of the Vehicle; (see EXHIBIT F – notice concerning location of vehicle)

154. The Plaintiff(s) is/are informed and believe(s), and thereon allege(s),that the Vehicle was then sold to a "third party" without disclosing to that "third party" the true nature of the defect found within the Vehicle to further conceal the defect;

155. The Plaintiff(s) is/are informed and believe(s), and thereon allege(s),that the Defendant(s), and each of them, use a system to communicate with all affiliate dealerships called "workbench";

156. The Plaintiff(s) is/are informed and believe(s), and thereon allege(s),that the Defendant(s), and each of them, concealed the true repair of the Vehicle through the "workbench" system; (see EXHIBIT G – workbench report generated on Vehicle);

157.  The Plaintiff(s) is/are informed and believe(s), and thereon allege(s),that the automotive industry uses a third party information system called "CarFAX" to capture "data" about a vehicle history;

158.  The Plaintiff(s) is/are informed and believe(s), and thereon allege(s),that the Defendant(s), and each of them, misreported to at least one the third party, the actual history of the Vehicle; (see EXHIBIT C – CarFAX Report);

159.  The Plaintiff(s) is/are informed and believe(s), and thereon allege(s),that the Defendant(s), and each of them, specifically, Mary Barra, in a video message addressed to GM employees, on March 17, 2014, admitted it had made many mistakes in the safety of the Vehicle produced by General Motors, and that the company needed to change its process;

160.  Plaintiff(s) are informed and believe that in 2011, the Defendant(s) and each of them, manufactured for some period of time a Vehicle known as the GMC Envoy which contained a "side-curtain" airbag;

161.  Plaintiff(s) are informed and believe that in 2011 a 2003 GMC Envoy had a premature airbag deployment that caused injury to the driver and/or passenger of the GMC Envoy;

162.  Plaintiff(s) are informed and believe that the Defendant(s), and each of them, covered up the incident by purchasing the GMC Envoy from the injured party and paid for medical expenses and other expenses incurred;

163.  Plaintiff(s) are informed and believe that the Defendant(s), and each of them, destroyed the GMC Envoy so that it could not be inspected by a third party or the National Highway Traffic Safety Association (NHTSA) to determine what the defect is or was;

164.  Plaintiff(s) are informed and believe that the servicing dealer and repair technician was publically speaking of the commonly known defect and that the Defendant(s), and each of them advised him not to speak any further or suffer the loss of his job;

165.  The Plaintiff(s) is/are informed and believe(s), and thereon allege(s),that that from 2005 to 2010, the Defendant, General Motors produced a Vehicle called the "H3 Hummer";

166.  The Plaintiff(s) is/are informed and believe(s), and thereon allege(s),that the H3 Hummer had reported issues with common use of it whereby in model years 2007-2009, the side curtain airbags would deploy with a "heavier" or "portly" person riding in either the driver or front passenger seat;

167.  The Plaintiff(s) is/are informed and believe(s), and thereon allege(s),that the report of the H3 Hummer lead to an article from the National Highway Traffic Safety Association (NHTSA);

168.  The Plaintiff(s) is/are informed and believe(s), and thereon allege(s),that the Consumers were advised to remove the "fuse" that controlled the airbags in certain situations because of the defect;

169.  The Plaintiff(s) is/are informed and believe(s), and thereon allege(s),that in 2010, the Defendant(s) General Motors and Chevrolet manufactured a Vehicle known as the "Camaro";

170.  The Plaintiff(s) is/are informed and believe(s), and thereon allege(s),that the 2010 Camaro has a known defect where the side curtain airbags would deploy while operating the Vehicle with a "heavier" or "portly" person in either the driver of front passenger seat;

171.  The Plaintiff(s) is/are informed and believe(s), and thereon allege(s),that the Defendant(s), took steps to solve that design problem with a new design;

172.  The Plaintiff(s) is/are informed and believe(s), and thereon allege(s),that the on November 14, 2014, the Arizona Attorney General brought a complaint in Federal Court for Injunctive Relief for Civil Fraud against General Motors Corporation;

173.  The Plaintiff(s) is/are informed and believe(s), and thereon allege(s),that the one of the Causes of Action filed by the Arizona Attorney General against the Defendant(s), and each of them, was for a defective "roof-rail" airbag defect that causes a premature airbag deployment of the roof rails found within its manufactured vehicles.  The Plaintiff(s) is/are informed and believe(s), and thereon allege(s),that this defect is essentially the same defect in the subject Vehicle of this complaint;

174. The Plaintiff(s) is/are informed and believe(s), and thereon allege(s),that in late June 2014, General Motors told U.S. and Canadian dealers to temporarily halt delivery of some 2013 and 2014 Chevrolet Cruze sedans because of a potential problem with airbags;

175. Plaintiff(s) are informed and believe that the General Public is not aware of the actual number of premature airbag deployments actually occurring because almost all of the incidents do not result in a police report filing because the law enforcement agencies do not generally take reports for manufacture defects in a vehicle;

176. Plaintiff(s) are informed and believe that the NHTSA does not track premature airbag deployments on vehicles, since most incidents go unreported to third parties, except to the Defendant(s), and each of them, or the manufacturer of said airbags;

177. The Plaintiff(s) is/are informed and believe(s), and thereon allege(s),that the Vehicle of the Plaintiff(s) was equipped with a "weight sensor" in the front passenger seat;

178. The Plaintiff(s) is/are informed and believe(s), and thereon allege(s),that at the time of the incident of deployment, the Vehicle recorded the front passenger as a "small adult";

179. The Plaintiff(s) is/are informed and believe(s), and thereon allege(s),that the Plaintiff, Christopher S. Hammatt, weighed in excess of 250 pounds at the time of the incident;

180. The Plaintiff(s) is/are informed and believe(s), and thereon allege(s),that the Plaintiff, Christopher S. Hammatt, is considered a "heavier" or "portly" person;

181. Plaintiff(s) are informed and believe that the Defendant(s), and each of them posted a "Vehicle Sticker" on the vehicle consisting of more than twenty percent (20%) of surface are relating to "Safety" about the vehicle used to induce the General Consumer into purchasing the Vehicle (see Exhibit E);

182. Plaintiff(s) are informed and believe that the Defendant(s), and each of them, advertised the safety of the Chevrolet Cruze in brochures, television, internet media and print media;

183. Plaintiff(s) are informed and believe that the Defendant(s), and each of them claimed that the Chevrolet Cruze has "AWARD-WINNING SAFETY TECHNOLOGY";

184. Plaintiff(s) are informed and believe that the Defendant(s), and each of them claimed that the Chevrolet Cruze is the "ONLY VEHICLE IN ITS CLASS TO OFFER 10 STANDARD AIRBAGS" to "FURTHER HELP PROTECT OUTBOARD PASSENGERS";

185. Plaintiff(s) are informed and believe that the Defendant(s), and each of them, claimed in their advertising that: "CHEVROLET IS COMMITTED TO KEEPING YOU AND YOUR FAMILY SAFE-FROM THE START OF YOUR JOURNEY TO YOUR DESTINATION. THAT'S WHY EVERY CHEVROLET IS DESIGNED WITH A COMPREHENSIVE LIST OF SAFETY AND SECURITY FEATURES TO HELP GIVE YOU PIECE OF MIND.' (see excerpts from brochure in Exhibit F);

186. Plaintiff(s) are informed and believe that at the time of the filing of this complaint, the Defendant(s), and each of them, have admitted to several injuries related to ignition switch failures, grounding problems and premature airbag deployments, not limited to 12 deaths linked to accidents linked to the ignition switch defects; However, Plaintiff(s) believe that the actual number is much higher, and that there may have been hundreds of deaths and or injuries attributable to ignition switch failures, grounding problems and premature airbag deployments;

187. The Plaintiff(s) is/are informed and believe(s), and thereon allege(s), that the Defendant(s), and each of them in 2014 issued numerous recalls related to the safety of their vehicles in an overwhelming response to public and government influence, which defects were and are potentially related to the Vehicle in the complaint, demonstrating the general disregard for the safety of the general public; those recalls consist of the below, specifically, but not limited to items of concern:

    a. Ignition switch flaw can cause vehicle to shut off unexpectedly, disabling safety features and power steering and braking.

    b. Gasket leak can lead to unintended roof rail air bag deployment.

    c. Airbags may not deploy in a crash because the vehicle computer may have been incorrectly programmed.

    d. Passenger seat side air bag may not deploy properly.

e.   Improperly installed passenger airbag could cause the airbag to only partially deploy in a crash.

f.   An electrical connection issue could cause the airbag to only partially deploy in a crash.

g.   Design flaw can cause the side-impact air bag and seat belt restraint to malfunction in a crash.

h.   Electronic stability control, which reduces the risk of rollover crashes, can turn off without warning.

i.   Seats may not be properly attached due to improper welding.

j.   The pretensioner, the part that causes the seatbelt to hold a person in his seat during a crash, may not work.

k.   Seat belt tensioner could break and may not provide restraint in case of a crash.

l.   Seatbelt cable can wear out and may not provide restraint in case of a crash.

m.   The chassis control module -- a part of the vehicle's electronics system linked to the braking, steering, and suspension -- could be short-circuited by small metal fragments, possibly causing the vehicle to stall.

n.   Wiring flaw can cause brake lights to fail, and disable other safety features.

o.   An electrical issue could cause the power steering to malfunction when the vehicle is started.

p.   Part of the electrical system can disconnect from the vehicle and cause a fire

q.   Part of the fuel pump system may overheat and melt, allowing fuel to leak. That could lead to the vehicle stalling or a fire.

r.   Hose failure can cause loss of power steering and braking.

s.   Brake fluid lines can corrode and reduce the vehicle's ability to stop.

t.   Axle half shaft can fracture, cutting off power to one of the wheels.

u.   Steering system's tie rod end can disconnect, leaving the driver unable to steer.

v.   Loose bolts in the front suspension could cause the loss of steering.

w.  A part in the suspension that holds the rear wheels in place could fail and cause the wheel to wobble.

x.   Unexpected loss of power steering can lead to a crash

y.   The transmission can inadvertently be shifted out of "park," causing a crash.

z.   Engine block heater power cord insulation can be damaged in cold weather.

aa. An electrical short can disable the power door lock and window switches.

bb. Headlight switch can overheat and cause a fire.

cc. Hydraulic braking can malfunction, requiring additional braking effort and a longer distance to stop the vehicle

dd. Fuel pipes may be improperly connected, which can cause a fire.

ee. An improperly sealed transmission line can leak, causing a fire risk.

ff.  Dashboard design can increase the risk of injury in some crashes.

188. The Plaintiff(s) is/are informed and believe(s), and thereon allege(s), that RICO is an acronym for Racketeer Influenced and Corrupt Organizations, and is shorthand for Title IX of the Organized Crime Control Act of 1970, Act of October 15, 1970, P.L. 91-452, codified at 18 U.S.C. §§ 1961-1968;

189. The Plaintiff(s) is/are informed and believe(s), and thereon allege(s), that the Defendants, and each of them, constitute an enterprise, within the meeting of  18 U. S. C. § 1961 (4), and Defendant is a RICO Enterprise;

190. The Plaintiff(s) is/are informed and believe(s), and thereon allege(s), that the Defendant General Motors is a manufacturer and distributor of Motor Vehicles within the meaning of the Statute ;

191. Plaintiff(s) is/are general consumers of motor vehicles sold by the Defendant(s), and each of them, to which the Defendant(s), and each of them marketed the motor vehicles for sale via the internet, and/or the telephone, and/or the mail, and/or through radio and television media, and/or print advertising, and/or other acceptable means of advertising;

192.  The Plaintiff(s) is/are informed and believe(s), and thereon allege(s), that the Defendant GM, its subsidiaries and joint venture entities sell vehicles under the Chevrolet "Brand";

193.  The Plaintiff(s) is/are informed and believe(s), and thereon allege(s), that the Defendant(s), and each of them use an exclusive network of Dealership Franchises called "Chevrolet Dealers" or "Chevrolet Dealer Network", to which the Defendant(s), and each of them sold the Vehicle to the Plaintiff(s);

194.  The Plaintiff(s) is/are informed and believe(s), and thereon allege(s), that the Defendant(s), and each of them, specifically, but not limited to, GENERAL MOTORS COMPANY, A Delaware Company, GENERAL MOTORS, LLC, CHEVROLET DIVISION OF GENERAL MOTORS d/b/a CHEVROLET, JIMMIE JOHNSON KEARNY MESA CHEVROLET, SELECT AUTOMOTIVE HOLDINGS, INC., HENDRICK CO AUTOMOTIVE, LLC, AUTOLIV, INC.; DELPHI, INC., is a culpable person or entity as defined under 18 U.S.C. § 1961 (3);

195.  The Plaintiff(s) is/are informed and believe(s), and thereon allege(s), that the Defendant(s), and each of them participated in some form of interstate commerce as evidenced by the manufacturing of the Vehicle in the State of Ohio and then selling it in the State of California, to the Plaintiff(s), and then reselling the Vehicle to a third party in the State of Wisconsin;

196.  The Plaintiff(s) is/are informed and believe(s), and thereon allege(s), that the Defendant(s), and each of them participated in an activity of Racketing since the production of the 2003 GMC Envoy and continued such through the H3 Hummer, the Chevrolet Camaro, the Vehicle in question, a 2014 Chevrolet Cruze, and other identified and unidentified Vehicles at this time which lasted over a period of more than ten (10) years;

197.  The Plaintiff(s) is/are informed and believe(s), and thereon allege(s), that the Defendant(s), and each of them, continuously concealed their activities, as specifically admitted to by the Defendant New GM when they admitted their knowledge of one or more continuing defects to the NHTSA as alleged in this complaint;

198. Plaintiff(s) are informed and believe that as a direct and proximate result of the wrongful conduct of the Defendant(s), and each of them, Plaintiff Christopher S. Hammatt (a) has sustained serious, severe, permanent, devastating, disabling, and mental injuries, including the loss of his ability to form cognitive thoughts on a regular basis, and has lost substantial memory recall; (b) has incurred substantial medical bills in an effort to cure his injuries in the past and will continue to do so in the future; (c) has suffered great physical pain in the past and will continue to do so in the future; (d) has suffered great mental anguish, annoyance, and embarrassment in the past and will continue to do so in the future; (e) has lost wages, benefits, and other income in the past and will continue to do so in the future; (f) has lost earning capacity for the future; (g) has lost quality of life in the past and will continue to do so in the future; and (h) has suffered other damages;

## IV.

## CAUSES OF ACTION

## FIRST CAUSE OF ACTION FOR NEGLIGENCE

(Plaintiff(s) against all Defendant(s), and DOES 1 through 50, inclusive)

199. Plaintiff hereby incorporates in the preceding paragraphs by this reference information contained and the allegations contained in Paragraphs 1 through 198 as though set forth fully at this point, and each and every part thereof with the same force and effect as if set forth herein at length;

200. The Plaintiff(s) is/are informed and believe(s), and thereon allege(s), that the facts and circumstances attendant upon the situation raise an inference of negligence, that makes the doctrine of *res ipsa loquitur* applicable herein as a matter of law and alleged in this instance, that is, the events and the consequences of same surrounding this situation do not occur in the absence of negligence;

201. Plaintiff is informed and believes, and thereupon alleges as follows:  At all times herein mentioned, the Defendant(s), and each of them, specifically, GENERAL

MOTORS COMPANY, CHEVROLET, and Does 1 through 25, inclusive, so designed, manufactured, assembled, or otherwise participated in building Plaintiff's Vehicle as heretofore set forth, so that its computer sensors used to detect a "ROLLOVER" event were defective and or lacking and the vehicle was not safe for the occupants of the Vehicle;

202.     Such defects in design, assembly, and/or manufacture of the airbag sensor system caused direct physical injury to plaintiff(s), and each of them, by the concussive effect of the deployment of the airbag hitting him in the head by the airbag, causing injury to his brain;

203.      Such defects in design, assembly, and/or manufacture of the airbag sensor system caused direct physical injury to plaintiff(s), and each of them, by the explosive effect of the deployment of the airbag hitting him in the collarbone, causing a fracture and soft tissue damage;

204.     Such defects in design, assembly, and/or manufacture of the airbag sensor system caused direct physical injury to plaintiff(s), and each of them, by hitting him with extreme force in the ear, rupturing his eardrum from that physical force of the airbag deployment;

205.     Such defects in design, assembly, and/or manufacture of the airbag sensor system caused direct physical injury to plaintiff(s), and each of them, from the physical stress of a rapid seatbelt tensioner forcing a downward pressure across the lap of the Plaintiff(s), and each of them, causing bruising and pain;

206.     Defendants(s), and each of them,  JIMMIE JOHNSON, SELECT and HENDRICK, and Does 26-50, are sued because there is probable cause to believe that their negligence in some way contributed to the injuries and damages complained of in this complaint as they installed aftermarket items on the vehicle (see Exhibit E);

207.     At all times herein mentioned, Defendant(s), and each of them,  so negligently designed, assembled and manufactured the Vehicle at issue in this lawsuit that it was not

safe to drive and was susceptible to causing enhanced injury and/or death when an otherwise properly designed vehicle would have protected its occupants during normal operation as the issue herein;

208.　　Such defects in design and/or manufacture of the Vehicle at issue rendered said vehicle not safe and said vehicle failed to properly reduce, prevent or otherwise eliminate the injuries plaintiff (s), and each of them, suffered in the unwarranted and unnecessary premature deployment of the Airbags;

209.　　At all times herein mentioned, Defendant(s), and each of them, owed a duty of due care in the design, crash worthiness, manufacture, assembly, marketing, and distribution of the Vehicle at issue in this lawsuit which they designed, assembled, manufactured, marketed and/or distributed;

210.　　Defendant(s), and each of them, owed a further duty to warn potential users of the risk of danger due to the use of said vehicle and to recall said vehicles upon learning of the lack of safety of said vehicles.

211.　　Plaintiff(s), and each of them, are informed and believe, and based thereon alleges that Defendant(s), and each of them learned of the lack of safety of said vehicles before the Airbag Deployment at issue in this lawsuit, said knowledge may be linked all the way to 2003 and the GMC Envoy;

212.　　Plaintiff(s), and each of them, are informed and believe, and based thereon alleges that Defendant(s), and each of them,  knew of said defects in the Vehicle Airbag System and took no steps to redesign, remanufacture or replace the faulty system(s);

213.　　Plaintiff(s), and each of them, are informed and believe, and based thereon alleges that Defendant(s), and each of them, had an obligation to redesign and/or repair the system which they knew was faulty prior to the manufacturing of the Vehicle;

214.　　Plaintiff(s), and each of them, are informed and believe, and based thereon alleges that Defendant(s), and each of them, chose to rather put profits ahead of safety of the

Consumers and the Plaintiff(s), and each them by continuing to manufacture and sold the Vehicle with the known defects;

215.     At all times herein mentioned, Defendant(s), and each of them, so carelessly, negligently, and without regard to human life and safety, manufactured, assembled and distributed the Vehicle at issue in this lawsuit;

216.     Defendant(s), and each of them, through their negligence, caused a situation which severe bodily injuries were caused because, among other things, the Vehicle was not safe and had a faulty design;

217.     As a direct and proximate result of Defendant(s)', and each of them,  negligence and carelessness as herein alleged, Plaintiff(s)  suffered extreme pain, injury, and other damages, as well as incidental and consequential damages ,according to proof at the time of trial;

218.     As a direct and proximate result of said tortious acts, omissions or conduct of Defendant(s), and each of them, Plaintiff(s) have sustained and incurred, and is certain in the future to sustain and incur, losses, injuries, and damages which will be proven at trial in a sum in excess of the minimum jurisdictional limits of this Court;

219.     At all times Defendant(s), and each of them, knew that the vehicle at issue in this litigation, and others of similar design and construction it manufactured and sold, would be used in a manner similar to the present case, and that there was a significant likelihood of serious bodily harm to persons such as the Plaintiff(s) in the event of an Airbag Deployment;

220.     Discovery done on Defendant(s) has shown that there have been at least several other similar prior incidents with similar serious injuries that occurred due to the lack of design of systems in the faces of known design defects and/or lack of redesign of those known dangers in the Vehicle;

221.    The documents provided indicate that victims in such prior similar incidents also alleged defects in the Airbag Sensors of the said vehicle, identical to the way Plaintiff(s) were injured;

222.     Defendant(s), and each of them, despicably, and in willful and conscious disregard of the safety of such persons and of the Plaintiff herein, allowed said defective product to remain in the stream of commerce, and failed to notify Plaintiff(s) or others similarly situated about the hazards in use of said vehicle, and failed to recall said vehicle and failed to remedy the design of said vehicle, thereby causing serious physical injuries in the event of an Airbag Deployment, including the Deployment of the airbags in the Vehicle of the Plaintiff(s) herein alleged;

223.    The Defendant(s), and each of them, failed to take the necessary steps to prevent serious injury to consumers once the product was placed into the stream of commerce;

224.    Defendant(s), and each of them, failed to give warnings to the public about the design defect, thereby depriving the public of the opportunity to obtain after-market remedies to the problem, or to take other actions to make the vehicles safe in their normal operation;

225.    Plaintiff(s) are therefore entitled to an award of exemplary or punitive damages, according to proof;

## SECOND CAUSE OF ACTION STRICT LIABILITY

(Plaintiff(s) against all Defendant(s), and DOES 1 through 50, inclusive)

226.    Plaintiff hereby incorporates in the preceding paragraphs by this reference information contained and the allegations contained in Paragraphs 1 through 225 as though set forth fully at this point, and each and every part thereof with the same force and effect as if set forth herein at length;

227.     At all relevant times herein, Defendant(s), and each of them, had an obligation to refrain from placing into the stream of commerce products which were in a defective condition;

228.     Said obligation was owed to Plaintiff(s) as a foreseeable user and consumer of said Vehicle;

229.     At all times herein mentioned, the Vehicle at issue in this lawsuit was defective as to design, manufacture and warnings, causing it to be in a dangerous and defective condition such that it was unsafe for its intended purpose and/or use, thus qualifying for application of strict liability;

230.     The Plaintiff(s) is/are informed and believe(s), and thereon allege(s), that the design defect was with the safety systems that were replaced and destroyed by the Defendant(s), and each of them, those systems being defective thus causing the premature airbag deployment;

231.     Defendant(s), and each of them, had on at least one occasion prior to this incident, notice of a similar design, manufacture or component defect, that would result in a similar malfunction of their Vehicle knowing that a strict duty of safety was afforded by the general consumer at the time of the sale of the Vehicle as stated herein;

232.     As a direct and proximate result of the dangerous and defective condition of said vehicle, Plaintiff(s) suffered the injuries and damages described herein;

233.      As a direct and proximate result of said tortious acts, omissions or conduct of Defendants, and each of them, Plaintiff (s) sustained and incurred, and is certain in the future to sustain and incur, losses, injuries, and damages which will be proven at trial;

234.     As a further proximate cause of the dangerous and defective condition of said vehicle, Plaintiff(s) have incurred and will incur medical, surgical, psychological, and other related and unrelated out-of-pocket expenses, the full nature and extent and the

amount of which are not yet known to Plaintiff(s) and leave is requested to amend this complaint to conform to proof at the time of trial;

235.     As a further proximate cause of the dangerous and defective condition of said vehicle, Plaintiff(s) have lost earnings and has a diminished earning capacity, the full nature and extent and the amount of which are not yet known to Plaintiff(s) and leave is requested to amend this complaint to conform to proof at the time of trial;

236.     At all times Defendant(s), and each of them, knew that the vehicle at issue in this litigation, and others of similar design and construction it manufactured and sold, would be used in a manner similar to the present case, and that there was a significant likelihood of serious bodily harm to persons such as Plaintiff(s) in the event of an accident;

237.     As previously stated, discovery done on Defendant(s), and each of them, has shown that there have been at least several other similar prior incidents with similar serious injuries that occurred due to the lack of proper system designs;

238.     The documents provided indicate that victims in such prior similar incidents also alleged defects in the Airbag Sensors of the said vehicle, identical to the way Plaintiff(s) were injured;

239.     Defendant(s), and each of them, despicably, and in willful and conscious disregard of the safety of such persons and of the Plaintiff(s) herein, allowed said defective product to remain in the stream of commerce, and failed to notify Plaintiff(s) or others similarly situated about the hazards in use of said vehicle, and failed to recall said vehicle and failed to remedy the faulty airbag system of said vehicle, thereby causing serious physical injuries in the event of an Airbag Deployment, including the Airbag Deployment of the Plaintiff(s) herein alleged;

240.     Defendant(s), and each of them, despicably, and in willful and conscious disregard destroyed the evidence of the defect, upon the advice of the TAC and its engineers, Bob Bennet and Doug Deal;

241.     The Defendant(s), failed to take the necessary steps to prevent serious injury to consumers once the product was placed into the stream of commerce;

242.     Defendant(s), and each of them, failed to give warnings to the public about the design defect, thereby depriving the public of the opportunity to obtain after-market remedies to the problem, or to take other actions to make the vehicles safer while in operation;

243.     The Defendant(s), and each of them, purposely destroyed and concealed evidence of the Sensor System defect and resold the Vehicle knowing that a claim was pending, denying the Plaintiff(s) the right to inspect said devices for such defect at issue in this litigation;

244.      The Defendant(s), and each of them,  manufactured the Vehicle and is strictly liable in tort when the Vehicle was placed on the market, knowing that it is to be used without inspection for defects, and such defect proved to causes injury to a human being, such as the Plaintiff(s) in this complaint;

245.     The Defendant(s), and each of them, inspected the Vehicle prior to sale in California, and the Defendant(s), and each of them manufactured or installed part of the Vehicle, prior to sale;

246.     The Defendant(s), and each of them, offered a warranty on said Vehicle and implied that the Vehicle was safe to operate in a normal fashion;

247.     The Defendant(s), and each of them, repaired said Vehicle, as they have done in the past, under warranty, at no cost to the Plaintiff(s);

248.     Plaintiff (s) are therefore entitled to an award of exemplary or punitive damages, according to proof;

**THIRD CAUSE OF ACTION**

**NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS**

(Plaintiff(s) against all Defendant(s), and DOES 1 through 50, inclusive)

249.     Plaintiff hereby incorporates in the preceding paragraphs by this reference information contained and the allegations contained in Paragraphs 1 through 248 as though set forth fully at this point, and each and every part thereof with the same force and effect as if set forth herein at length;

250.     Defendant(s), and each of them, through the alleged misrepresentations and from their negligent failure to warn the Plaintiff(s) of the unsafe Vehicle, when they had a duty to not do such actions, acted in an unreasonable fashion;

251.     These actions caused harm to the Plaintiff(s), and each of them;

252.     These actions caused emotional trauma to the Plaintiff(s), and each of them;

253.     The Defendant(s), and each of them, knew that their actions would cause mental suffering;

254.     Their actions may be negligent in behavior;

255.     The Plaintiff(s), and each of them, suffered general and specific damages that will be proved at trial;

256.     The Defendant(s), and each of them are responsible and the Plaintiff(s) are seeking recovery.

**FOURTH CAUSE OF ACTION FRAUDULENT CONCEALMENT**

(Plaintiff(s) against all Defendant(s), and DOES 1 to 50, inclusive)

257.     Plaintiff(s) hereby incorporates in the preceding paragraphs by this reference information contained and the allegations contained in Paragraphs 1 through 256 as

though set forth fully at this point, and each and every part thereof with the same force and effect as if set forth herein at length;

258.     Prior to Plaintiff(s)' use of the Vehicle and during the period in which Plaintiff(s) actually used the Vehicle, Defendant(s). and each of them, fraudulently suppressed material information regarding the safety and efficacy of the Vehicle, including information regarding airbag deployment;

259.     The Defendant(s), and each of them concealed and suppressed material facts concerning the ignition switch failures, grounding problems and premature airbag deployments, and Defendant General Motors also has successor liability for the acts of concealment and oppression of this known defects of the "Old General Motors" production of vehicles;

260.     The Defendant(s), and each of them, had a duty to disclose the ignition switch failures, grounding problems and premature airbag deployments because they were known and/or accessible on to the Defendant(s), and each of them, who had superior knowledge and access to the facts, and the Defendant(s), and each of them, knew they were not known to the Plaintiff(s) or could have been reasonably discoverable to the Plaintiff(s) at the time of the purchase of the Vehicle;

261.     The Defendant(s), and each of them, actively concealed and/or suppressed these material facts, in whole or in part, to protect their profits and avoid costly recall or even simpler repair the defect during the assembly process of the Vehicle, and they chose not to repair the Vehicle at the expense of the Plaintiff(s) placing profits ahead of safety;

262.     Furthermore, Defendant(s), fraudulently concealed the safety issues with the Vehicle by destroying the evidence of the problems with the various components after they were replaced and the Vehicle was repaired by the Selling Dealership, Jimmie Johnson Chevrolet in San Diego, California;

263.     This concealment was done with the intent to avoid independent inspection by the Plaintiff(s), with the defendant(s), and each of them knowing that an active claim for damages existed, as it was reported in their own internal repair receipts as attached as an exhibit to this complaint;

264.     Plaintiff believes that the fraudulent misrepresentation described herein was intentional to keep the sales volume of the Vehicle strong, placing profits ahead of safety;

265.     Defendant(s), and each of them, knew or should have known that the Vehicle was being used to transport passengers on the Highway as allowed by law;

266.     Defendant(s) fraudulently concealed safety issues with the Vehicle in order to induce dealerships to sell the Vehicle to the public and those individuals would use the Vehicle;

267.     At the time Defendants concealed the fact that the Vehicle was not safe, Defendants were under a duty to communicate this information to National Highway Traffic Safety Administration (NHTSA), the general public and all government and consumer protection agencies in such a manner that they could appreciate the risks associated with using the Vehicle;

268.     Plaintiff(s) relied upon the Defendant(s)', and each of them, outrageous untruths regarding the safety of the Vehicle;

269.     As a direct and proximate result of Defendants' malicious and or intentional concealment of material life altering information from Plaintiff, Defendant(s), and each of them, caused or contributed to Plaintiff's injuries;

270.     It is unconscionable and outrageous that Defendant(s), and each of them, would risk the lives of consumers;

271.     Despite this knowledge, the Defendant(s), and each of them, made conscious decisions not to redesign, label, warn or inform the unsuspecting consuming public of the Safety Issues with the Vehicle;

272.     Defendant(s)', and each of them, outrageous conduct rises to the level necessary that Plaintiff should be awarded punitive damages to deter Defendant(s), and each of them,  from this type of outrageous conduct in the future and to discourage Defendant(s), and each of them, from placing profits above the safety of consumers in the United States of America;

273.     Defendant(s)', and each of them, fraudulent concealment tolled any statute of limitations because only the Defendant(s), and each of them, knew the true dangers associated with the use of  the Vehicle as described herein;

274.     Defendant(s), and each of them, did not disclose this information to the Plaintiff and the general public;

## **FIFTH CAUSE OF ACTION**
## **BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY**

(Plaintiff(s) against all Defendant(s), and DOES 1 to 50 inclusive)

275.     Plaintiff(s) hereby incorporates in the preceding paragraphs by this reference information contained and the allegations contained in Paragraphs 1 through 274 as though set forth fully at this point, and each and every part thereof with the same force and effect as if set forth herein at length;

276.     At the time Defendant(s), and each of them, marketed, distributed and sold the Vehicle to Plaintiff Robert Hammatt, Defendant(s), and each of them, knew of the intended, reasonably foreseeable and/or ordinary use of the Vehicle and warranted that the Vehicle was merchantable, safe and fit for such use;

277.     Members of the consuming public, including consumers such as Plaintiff(s), were intended third party beneficiaries of the warranty;

278.     The Vehicle was not merchantable or safe or fit for its intended, reasonably foreseeable and/or ordinary purpose, because it has a propensity to lead to the serious personal injuries described in this complaint, specifically, a design and/or manufacture and/or pert defect that would result in a safety system failure;

279.     Plaintiff(s), by driving normally the Vehicle, reasonably relied upon the skill and judgment of Defendant(s), and each of them, as to whether the Vehicle was of merchantable quality and safe for its intended, reasonably foreseeable and/or ordinary use;

280.      Defendant(s)', and each of them, breach of the implied warranty of merchantability was the direct and proximate cause of Plaintiff's injury, specifically, the TBI suffered by the plaintiff;

281.     Defendant(s)', and each of them, conduct, as described above, was extreme and outrageous;

282.     Defendant(s), and each of them, risked the lives of the consumers and users of their products, including Plaintiff, with knowledge of the safety and efficacy problems and suppressed this knowledge from the general public;

283.     Defendant(s), and each of them knew of the issues regarding the safety of the Vehicle and took steps to repair the Vehicle without properly disclosing it to the public and destroyed the evidence of the defect;

284.     Defendant(s), and each of them, made conscious decisions not to redesign, re-label, warn or inform the unsuspecting consuming public;

285.      Defendant(s)', and each of them, outrageous conduct warrants an award of punitive damages;

## SIXTH CAUSE OF ACTION

## BREACH OF IMPLIED WARRANTY OF FITNESS FOR A PARTICULAR PURPOSE

(Plaintiff(s) against all Defendant(s) and DOES 1 to 50 inclusive)

286.  Plaintiff(s) hereby incorporates in the preceding paragraphs by this reference information contained and the allegations contained in Paragraphs 1 through 285 as though set forth fully at this point, and each and every part thereof with the same force and effect as if set forth herein at length;

287.  Defendant(s), and each of them, sold the Vehicle with an implied warranty that it was fit for the particular purposes of driving passengers on the road, and to provide other benefits, such as efficient gas mileage, transporting passengers safely and not causing TBIs as the Plaintiff(s) suffered here;

288.  Members of the consuming public, including Plaintiff, were intended third party beneficiaries of the warranty;

289.  The Vehicle was not fit for the particular purpose of a safe Vehicle to carry passengers on normal highways and streets, and other known benefits without serious risk of personal injury;

290.  Plaintiff reasonably relied on Defendant(s)', and each of them, representations that the Vehicle was safe and effective for passenger Vehicle to be used on highways;

291.  Defendant(s)', and each of them, breach of the implied warranty of fitness for a particular purpose was the direct and proximate cause of Plaintiff's injury;

292.  Defendant(s)', and each of them,  conduct, as described above, was extreme and outrageous;

293.  Defendant(s), and each of them, risked the lives of the consumers and users of their products, including Plaintiff, with knowledge of the safety and efficacy problems and suppressed this knowledge from the general public;

294.  Defendant(s), and each of them, made conscious decisions not to redesign, re-label, warn or inform the unsuspecting consuming public;

295.  Defendant(s)', and each of them, outrageous conduct warrants an award of punitive damages in this case;

### SEVENTH CAUSE OF ACTION NEGLIGENT FAILURE TO WARN

(Plaintiff(s) against all Defendant(s), and DOES 1 to 50, inclusive)

296.  Plaintiff(s) hereby incorporates in the preceding paragraphs by this reference information contained and the allegations contained in Paragraphs 1 through 295 as though set forth fully at this point, and each and every part thereof with the same force and effect as if set forth herein at length;

297.  Before Plaintiff(s) used the Vehicle, and during the period in which they used it, Defendant(s), and each of them, knew or had reason to know that  the Vehicle was dangerous and created an unreasonable risk of bodily harm to consumers;

298.  Defendant(s), and each of them, had a duty to exercise reasonable care to warn end users of the dangerous conditions or of the facts that made the Vehicle likely to be dangerous;

299.  Despite the fact that Defendant(s),  and each of them, knew or had reason to know that the Vehicle was dangerous, Defendant(s), and each of them, failed to exercise reasonable care in warning the medical community and consumers, including Plaintiff, of the dangerous conditions and facts that made the Vehicle likely to be dangerous;

300.  The Plaintiff's injury was a direct and proximate result of Defendant(s)', and each of them, failure to warn of the dangers of the Vehicle, specifically the presence of the defective safety system design that lead to the safety system failure in the Vehicle of this complaint;

301.  Defendant(s)', and each of them, conduct, as described above, was extreme and outrageous;

302.  Defendant(s), and each of them, risked the lives of consumers and users of their products, including Plaintiff, with knowledge of the safety and efficacy problems and suppressed this knowledge from the general public;

303.  Defendant(s), and each of them, made conscious decisions not to redesign, re-label, warn or inform the unsuspecting consuming public;

304.  Defendant(s)', outrageous conduct warrants an award of punitive damages;

## EIGHTH CAUSE OF ACTION BREACH OF EXPRESS WARRANTY

(Plaintiff(s) against all Defendant(s), and DOES 1 to 50, inclusive)

305.  Plaintiff(s) hereby incorporates in the preceding paragraphs by this reference information contained and the allegations contained in Paragraphs 1 through 304 as though set forth fully at this point, and each and every part thereof with the same force and effect as if set forth herein at length;

306.  Through aggressive marketing and advertising campaigns, Defendant(s), and each of them, expressly warranted that the Vehicle was safe and effective to members of the consuming public, including Plaintiff;

307.  Members of the consuming public, including consumers such as Plaintiff, were intended third party beneficiaries of the warranty;

308.   The Vehicle does not conform to these express representations because the Vehicle is not safe and has serious side effects, including death, or TBI, as the Plaintiff suffered;

309.  The Vehicle, as designed, manufactured, sold and/or supplied by the Defendant(s), and each of them, was defectively designed and placed in to the stream of commerce by Defendant(s), and each of them, in a defective and unreasonably dangerous condition, which conditions are stated above that lead to the safety system failure;

310.  Defendant(s), and each of them, failed to warn and/or place adequate warnings and instructions on  the Vehicle;

311.   Defendant(s), and each of them, failed to adequately test the Vehicle; and Defendants failed to provide timely and adequate post-marketing warnings and instructions after they knew the risk of injury from the Vehicle;

312.  Defendant(s), and each of them, repaired the Vehicle under its warranty;

313. Plaintiff reasonably relied upon Defendant(s)', warranty that the Vehicle was safe and effective when they purchased and used the Vehicle in a normal operating fashion;

314. Plaintiff's injuries were the direct and proximate result of Defendant(s)', and each of them, breach of their express warranty;

315. Defendant(s)', and each of them, conduct, as described above, was extreme and outrageous;

316. Defendant(s), and each of them, risked the lives of the consumers and users of their products, including Plaintiff, with knowledge of the safety and efficacy problems and suppressed this knowledge from the general public;

317. Defendant(s), and each of them, made conscious decisions not to redesign, re-label, warn or inform the unsuspecting consuming public;

318. Defendant(s)', and each of them, outrageous conduct warrants an award of punitive damages;

## NINTH CAUSE OF ACTION FRAUDULENT MISREPRESENTATION

(Plaintiff(s) against all Defendant(s), and DOES 1 to 50, inclusive)

319. Plaintiff(s) hereby incorporates in the preceding paragraphs by this reference information contained and the allegations contained in Paragraphs 1 through 318 as though set forth fully at this point, and each and every part thereof with the same force and effect as if set forth herein at length;

320. Defendant(s), and each of them, having undertaken the manufacturing, marketing, selling, warranting, distribution and promotion of the Vehicle, owed a duty not to deceive the Plaintiffs, and the public regarding the character, safety, quality and/or effectiveness of their Vehicle;

321. The duty not to deceive is distinct from than the duty to warn;

322. Since the Vehicle's design and manufacture in 2008, and on multiple occasions to the present date, Defendant(s), and each of them, fraudulently misrepresented and published

information in various forms of media (including, but not limited to, ad campaigns, television, internet, etc.) regarding their product's character, safety, quality and/or effectiveness, including, but not limited to, the public ad campaigns which were the subject of Multiple Recalls and a halting of sales to the General Public in 2014 of all Chevrolet Cruze Models;

323.   At the time of Defendant(s)', and each of them,  fraudulent misrepresentations, Plaintiff(s) were unaware and ignorant of the falsity of the statements and reasonably believed them to be true;

324.   Defendant(s), and each of them, breached their duties to the Plaintiffs by providing false, incomplete and misleading information regarding the Vehicle;

325.  Defendant(s), and each of them, acted with deliberate intent to deceive and mislead Plaintiffs, and the public;

326.  Defendant(s), and each of them, took further deliberate acts to conceal the defect by erasing the codes in the Vehicle's computer, replacing all the sensors, throwing the parts away, knowing a claim existed, and misreporting to the Public, the actual defect in the Vehicle;

327.  Plaintiffs reasonably relied upon Defendant(s)', and each of them, deceptive, inaccurate and fraudulent misrepresentations;

328.  As a direct and proximate result of Defendant(s)', fraudulent misrepresentations, Plaintiffs suffered the harm described herein;

329.  Defendant(s)', and each of them, conduct was committed with knowing, conscious, wanton, willful and deliberate disregard for the value of human life and the rights and safety to consumers, including Plaintiffs, thereby entitling Plaintiff to punitive and exemplary damages so as to punish Defendant(s), and each of them, and deter them from similar conduct in the future;

## TENTH CAUSE OF ACTION

## VIOLATIONS OF THE CONSUMER LEGAL REMEDIES ACT (CLRA)
## (CAL. CIV. CODE § 1750, et seq.)

(Plaintiff(s) against all Defendant(s), and DOES 1 to 50, inclusive)

330.  Plaintiff hereby incorporates in the preceding paragraphs by this reference information contained and the allegations contained in Paragraphs 1 through 329 as though set forth fully at this point, and each and every part thereof with the same force and effect as if set forth herein at length;

331.  The Plaintiff(s) is/are informed and believe(s), and thereon allege(s), that the Defendant(s), specifically, GM is a "person" under CAL. CIV. CODE § 1761(c);

332.  The Plaintiff(s) is/are informed and believe(s), and thereon allege(s), that Plaintiff(s) are "consumers," as defined by CAL. CIVIL CODE § 1761(d), who purchased the Defective Vehicles;

333.  The Plaintiff(s) is/are informed and believe(s), and thereon allege(s), that the Defendant(s), specifically, GM engaged in unfair or deceptive acts or practices that violated CAL. CIV. CODE § 1750, *et seq*., as described above and below;

334.  The Plaintiff(s) is/are informed and believe(s), and thereon allege(s), that Under the TREAD Act, 49 U.S.C. §§ 30101, *et seq*., and its accompanying regulations, if a manufacturer learns that a vehicle contains a defect and that defect is related to motor vehicle safety, the manufacturer must disclose the defect. 49 U.S.C. § 30118(c)(1) & (2);

335.  The Plaintiff(s) is/are informed and believe(s), and thereon allege(s), that under the TREAD Act, if it is determined that the vehicle is defective, the manufacturer must promptly notify vehicle owners, purchasers and dealers of the defect and remedy the defect. 49 U.S.C. § 30118(b)(2)(A) & (B);

336.  The Plaintiff(s) is/are informed and believe(s), and thereon allege(s), that under the TREAD Act, manufacturers must also file a report with NHTSA within five working days

of discovering "a defect in a vehicle or item of equipment has been determined to be safety related, or a noncompliance with a motor vehicle safety standard has been determined to exist." 49 C.F.R. § 573.6(a) & (b);

337. The Plaintiff(s) is/are informed and believe(s), and thereon allege(s), that at a minimum, the report to NHTSA must include: the manufacturer's name; the identification of the vehicles or equipment containing the defect, including the make, line, model year and years of manufacturing; a description of the basis for determining the recall population; how those vehicles differ from similar vehicles that the manufacturer excluded from the recall; and a description of the defect. 49 C.F.R. § 276.6(b), (c)(1), (c)(2), & (c)(5);

338. The Plaintiff(s) is/are informed and believe(s), and thereon allege(s), that the manufacturer must also promptly inform NHTSA regarding: the total number of vehicles or equipment potentially containing the defect; the percentage of vehicles estimated to contain the defect; a chronology of all principal events that were the basis for the determination that the defect related to motor vehicle safety, including a summary of all warranty claims, field or service reports, and other information, with its dates of receipt; and a description of the plan to remedy the defect. 49 C.F.R. § 276.6(b) & (c);

339. The Plaintiff(s) is/are informed and believe(s), and thereon allege(s), that the TREAD Act provides that any manufacturer who violates 49 U.S.C. § 30166 must pay a civil penalty to the U.S. Government;

340. The Plaintiff(s) is/are informed and believe(s), and thereon allege(s), that the current penalty "is $7,000 per violation per day," and the maximum penalty "for a related series of daily violations is $17,350,000." 49 C.F.R. § 578.6(c);

341. The Plaintiff(s) is/are informed and believe(s), and thereon allege(s), that from at least 2003, Old GM, with the manufacture of the GMC Envoy had knowledge of a defect with the "Side Curtain Airbag" and safety systems in their vehicles, including an ignition switch defect, but hid the problem for the remainder of its existence until 2009;

342. The Plaintiff(s) is/are informed and believe(s), and thereon allege(s), that from its creation on July 10, 2009, the Defendant(s), and each of them, specifically GM knew of the

"Side Curtain Airbag" and safety systems in their vehicles, including an ignition switch defect because of the knowledge of Old GM and continuous reports up until the present, to which the Defendant GM (known as NEW GM) took responsibility for Old GM and its manufacturing processes;

343.  The Plaintiff(s) is/are informed and believe(s), and thereon allege(s), that the Defendant(s), specifically, GM admits the defect in the "Side Curtain Airbag" and safety systems in their vehicles, including an ignition switch defect has been linked to more than 10 accident-related fatalities, but other sources have reported that hundreds of deaths and serious injuries are linked to the faulty "Side Curtain Airbag" and safety systems in their vehicles, including an ignition switch defect;

344.  The Plaintiff(s) is/are informed and believe(s), and thereon allege(s), that the Defendant(s), specifically, GM despite being aware of the "Side Curtain Airbag" and safety systems in their vehicles, including an ignition switch defect ever since its creation on July 10, 2009, GM waited until February 7, 2014, before finally sending a letter to NHTSA confessing its knowledge of the "Side Curtain Airbag" and safety systems in their vehicles, including an ignition switch defects which could cause the vehicles to lose power, and in turn cause the airbags not to deploy;

345.  The Plaintiff(s) is/are informed and believe(s), and thereon allege(s), that the Defendant(s), specifically, GM initially identified two vehicle models, along with the corresponding model years, affected by the defect – the 2005-2007 Chevrolet Cobalt and the 2007 Pontiac G5;

346.  The Plaintiff(s) is/are informed and believe(s), and thereon allege(s), that the Defendant(s), specifically, GM on February 25, 2014, GM amended its letter to include four additional vehicles, the 2006-2007 Chevrolet HHR, 2006-2007 Pontiac Solstice, 2003-2007 Saturn Ion, and the 2007 Saturn Sky;

347.  The Plaintiff(s) is/are informed and believe(s), and thereon allege(s), that the Defendant(s), specifically, GM never disclosed to the NHTSA the Chevrolet Cruze in their disclosure at any time;

348. The Plaintiff(s) is/are informed and believe(s), and thereon allege(s), that the Defendant(s), and each of them, never reported the "Airbag System Failure" for the Vehicle that is the subject of this complaint at any time;

349. The Plaintiff(s) is/are informed and believe(s), and thereon allege(s), that the first and only report to the NHTSA was made by the Plaintiff(s) on or about June 26, 2014;

350. The Plaintiff(s) is/are informed and believe(s), and thereon allege(s), that the Defendant(s), and each of them by failing to disclose and by actively concealing the "Side Curtain Airbag" and safety systems in their vehicles, including an ignition switch defect, and by selling vehicles while violating the TREAD Act and through its other conduct as alleged herein, Old GM and GM both engaged in deceptive business practices prohibited by the CLRA, CAL. CIV. CODE § 1750, *et seq.*;

351. The Plaintiff(s) is/are informed and believe(s), and thereon allege(s), that the Defendant(s), specifically, both Old GM and GM failed for many years to inform NHTSA about known defects in the Defective Vehicles' safety system. Consequently, the public, including Plaintiff(s), received no notice of the "Side Curtain Airbag" and safety systems in their vehicles, including an ignition switch defects, that the defect could disable multiple electrical functions including power steering and power brakes, or that the defect could cause the airbags to either deploy prematurely or not to deploy at all in an accident;

352. The Plaintiff(s) is/are informed and believe(s), and thereon allege(s), that the Defendant(s), specifically, GM knew that the "Side Curtain Airbag" and safety systems in their vehicles, including an ignition switch defect had a defect that could cause a vehicle's engine to lose power without warning, and that when the engine lost power there was a risk that electrical functions would fail and that the airbags would either prematurely deploy or not deploy at all;

353. The Plaintiff(s) is/are informed and believe(s), and thereon allege(s), that the Defendant(s), specifically, GM failed to inform NHTSA or warn Plaintiff or the public about these inherent dangers despite having a duty to do so;

354.  The Plaintiff(s) is/are informed and believe(s), and thereon allege(s), that the Defendant(s), specifically, Old GM and GM owed Plaintiff(s) a duty to comply with the TREAD Act and disclose the defective nature of the Defective Vehicle, especially at the time of the sale, including the "Side Curtain Airbag" and safety systems in their vehicles, including an ignition switch defect and accompanying loss of power and failure of the airbags to deploy prematurely or not to deploy at all, because Old GM and GM:

   a.  Possessed exclusive knowledge of the "Side Curtain Airbag" and safety systems in their vehicles, including an ignition switch defects rendering the Defective Vehicle inherently more dangerous and unreliable than otherwise similar vehicles; and

   b.  Intentionally concealed the hazardous situation with the Defective Vehicle by failing to comply with the TREAD Act, which required the disclosure of the "Side Curtain Airbag" and safety systems in their vehicles, including an ignition switch defects;

355.  The Plaintiff(s) is/are informed and believe(s), and thereon allege(s), that the Defective Vehicle equipped with the faulty "Side Curtain Airbag" and safety systems in their vehicles, including an ignition switch defect pose an unreasonable risk of death or serious bodily injury to Plaintiff, passengers, other motorists, and pedestrians, because they are susceptible to sudden loss of power resulting in the loss of power steering and power brakes and premature deployment of the side curtain airbags;

356.  The Plaintiff(s) is/are informed and believe(s), and thereon allege(s), that the Defendant(s), specifically, Old GM's and GM's unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers, including Plaintiff, about the true safety and reliability of the Defective Vehicle;

357.  The Plaintiff(s) is/are informed and believe(s), and thereon allege(s), that the Defendant(s), and each of them, that the violations of the CLRA detailed above, Old GM and GM caused actual damage to Plaintiff(s) and, if not stopped, will continue to harm Plaintiff(s) and the General Consumer of similar Vehicles;

358.  The Plaintiff(s) is/are informed and believe(s), and thereon allege(s), that the Defendant(s), specifically, GM timely disclosed the defect, ROBERT W. HAMMATT would either not have purchased the Defective Vehicle at all, or would have paid less for the Defective Vehicle;

359.  The Plaintiff(s) is/are informed and believe(s), and thereon allege(s), that Plaintiff(s) did not receive the benefit of their bargain which was for a safe vehicle free of serious safety defects;

360.  The Plaintiff(s) is/are informed and believe(s), and thereon allege(s), that the Defendant(s), specifically, GM timely disclosed the "Side Curtain Airbag" and safety systems in their vehicles, including an ignition switch defects, the issue would have been resolved years ago and the value of Plaintiff's Defective Vehicle would not now be diminished nor unsafe;

361.  The Plaintiff(s) is/are informed and believe(s), and thereon allege(s), that they face the risk of irreparable injury as a result of GM's acts and omissions in violation of the CLRA, and these violations present a continuing risk to Plaintiff(s) and to the general public;

362.  The Plaintiff(s) is/are informed and believe(s), and thereon allege(s), that under CAL. CIV. CODE § 1780(a), Plaintiff(s) seek monetary relief against GM measured as the diminution of the value of their vehicles caused by Old GM's and GM's violations of the CLRA as alleged herein;

363.  The Plaintiff(s) is/are informed and believe(s), and thereon allege(s), that under CAL. CIV. CODE § 1780(b), Plaintiff Christopher Hammatt seeks an additional award against GM of up to $5,000 as he qualifies as a "disabled person" under the CLRA;

364.  The Plaintiff(s) is/are informed and believe(s), and thereon allege(s), that GM knew or should have known that their conduct was directed to one or more consumers who are senior citizens or disabled persons;

365.  The Plaintiff(s) is/are informed and believe(s), and thereon allege(s), that GM's conduct caused the Plaintiff(s) Christopher Hammatt to suffer a substantial loss of property set aside

for retirement or for personal or family care and maintenance, or assets essential to the health or welfare of the senior citizen or disabled person;

366.  The Plaintiff(s) is/are informed and believe(s), and thereon allege(s), that the Plaintiff(s) who are senior citizens or disabled persons are substantially more vulnerable to Old GM's and GM's conduct because of age, poor health or infirmity, impaired understanding, restricted mobility, or disability, and each of them suffered substantial physical, emotional, or economic damage resulting from Old GM's and GM's conduct;

367.  Plaintiff(s) also seeks punitive damages against GM because it carried out reprehensible conduct with willful and conscious disregard of the rights and safety of others, subjecting the Plaintiff(s) to potential cruel and unjust hardship as a result;

368.  The Plaintiff(s) is/are informed and believe(s), and thereon allege(s), that first Old GM and then GM intentionally and willfully concealed and failed to inform NHTSA of the unsafe and unreliable Defective Vehicle, deceived Plaintiff(s) on life-or-death matters, and concealed material facts that only they knew, all to avoid the expense and public relations problem of correcting a deadly flaw in the Defective Vehicle;

369.  The Plaintiff(s) is/are informed and believe(s), and thereon allege(s), that GM's unlawful conduct constitutes malice, oppression, and fraud warranting punitive damages under CAL. CIV. CODE § 3294;

370.  Plaintiff(s) further seeks an order enjoining GM's unfair or deceptive acts or practices, restitution, punitive damages, costs of court, attorneys' fees under CAL. CIV. CODE § 1780(e), and any other just and proper relief available under the CLRA;

371.  Plaintiff(s) are including an affidavit with this Complaint that show that venue in this District is proper, to the extent such an affidavit is required by CAL. CIV. CODE § 1780(d);

## ELEVENTH CAUSE OF ACTION

## VIOLATION OF BUSINESS & PROFESSIONS CODE § 17200

## CALIFORNIA'S UNFAIR COMPETITION LAW

(Plaintiff(s) against all Defendant(s), and DOES 1 to 50, inclusive)

372.  Plaintiff(s)  hereby incorporates in the preceding paragraphs by this reference information contained and the allegations contained in Paragraphs 1 through 371 as though set forth fully at this point, and each and every part thereof with the same force and effect as if set forth herein at length;

373.  California Business and Professions Code section 17200 prohibits any "unlawful, unfair, or fraudulent business act or practices."

374.  The Plaintiff(s) is/are informed and believe(s), and thereon allege(s), that the Defendant(s), and each of them has engaged in unlawful, fraudulent, and unfair business acts and practices in violation of California's Unfair Competition Law, and also has successor liability for the unlawful, fraudulent and unfair business acts and practices of Defendant General Motors;

375.  At all times herein, Defendants, and each of them, engaged in a pattern and practice of advertising and marketing the 2014 Chevrolet Cruze as a safe vehicle to be driven on the roadway in a normal fashion, even though Defendants, and each of them, knew or should have known that the airbag sensors and airbag system was not safe and contained known defects;

376.  These practices constitute unlawful, unfair and/or fraudulent business acts or practice and/or unfair, deceptive, untrue or misleading advertising within the meaning of California Business & Professions Code § 17200;

377.  Further, the Defendant(s), and each of them violated the unlawful prong of section 17200 by their violations of the CLRA, CAL. CIV. CODE § 1750, *et seq*., as set forth in the TWELFTH Cause of action by the acts and practices set forth in this Complaint;

378.  The Defendant(s) and each of them also violated the unlawful prong because they engaged in business acts or practices that are unlawful because they violate the TREAD Act, 49 U.S.C. §§ 30101, *et seq*., and its regulations;

379.  The Defendant(s), and each of them, violated the TREAD Act when they failed to timely inform NHTSA of the "Side Curtain Airbag" and safety systems in their vehicles, including an ignition switch defect and allowed the Vehicle to be sold with these defects;

380.  The Defendant(s), and each of them violated the unfair and fraudulent prong of § 17200 because, in failing or refusing to inform NHTSA about a defect affecting the safety and reliability of the Defective Vehicle, the Defendant(s) precluded reasonable owners from discovering their vehicles were unsafe and unreliable;

381.  The information that the Defendant(s) were required to disclose to NHTSA about the safety design flaws, the defective side curtain airbags, and ignition switch failure was material to a reasonable consumer;

382.  The Defendant(s), and each of them, made a profit from their unlawful, unfair and/or fraudulent business acts or practice and/or unfair, deceptive, untrue or misleading advertising;

383.  All of the wrongful conduct alleged herein occurred, and continues to  occur, in the conduct of the Defendant(s)' business;

384.  The Defendant(s)', and each of them, wrongful  conduct is part of a pattern or generalized course of conduct that is still perpetuated  and repeated, both in California and nationwide;

385.  Plaintiff(s) have suffered an injury, including the loss of money or property, due to the Defendant(s)', and each of them, unfair, unlawful and/or deceptive practices;

386.  Plaintiff(s) are informed and believe that the Defendant(s), and each of them, profit was in excess of $150,000,000.00 (150 Million Dollars) from the sale of the Chevrolet Cruze in 2014 in the State of California;

387.  The Defendant(s), and each of them, pursuant to code, are not entitled to said profits from their unlawful, unfair and/or fraudulent business acts or practice and/or unfair, deceptive, untrue or misleading advertising;

388.  Plaintiff(s) demand at the answering of this Complaint for Damages, that the Defendant(s), and each of them, post a bond with this Court in the amount of $100,000,000.00 (100 Million Dollars) as the Defendant(s), and each of them, will have to disgorge their profits from the sales of the Chevrolet Cruze to the injured Plaintiff(s) in this action under the Code;

389.  Plaintiff(s) seeks the imposition of a constructive trust over, and restitution and disgorgement of, the monies collected and/or profits realized by Defendant(s), and each of them, as a result of their unfair business practices, and injunctive relief calling for Defendant(s), and each of them, to cease such unfair business practices in the future;

390.  Plaintiff requests that this Court enter such orders or judgments as may be necessary, including a declaratory judgment that GM has violated the UCL; an order enjoining GM from continuing its unfair, unlawful, and/or deceptive practices;  an order and judgment restoring to the Plaintiff(s) any money lost as the result of GM's unfair, unlawful and deceptive trade practices, including restitution and  disgorgement of any profits GM received as a result of its unfair, unlawful and/or  deceptive practices, as provided in CAL. BUS. & PROF. CODE § 17203, CAL CIV.  PROC. § 384 and CAL. CIV. CODE § 3345; and for such other relief as may be just and  proper;

## TWELFTH CAUSE OF ACTION

## VIOLATION OF BUSINESS & PROFESSIONS CODE SECTION 17500

(Plaintiff(s) against all Defendant(s), and DOES 1 to 50, inclusive)

391.  Plaintiff(s) hereby incorporates in the preceding paragraphs by this reference information contained and the allegations contained in Paragraphs 1 through 390 as though set forth fully at this point, and each and every part thereof with the same force and effect as if set forth herein at length;

392.  Defendant(s)', and each of them, use of various forms of advertising media to advertise, call attention to, or give publicity to the use of the 2014 Chevrolet Cruze as a safe vehicle

to be operated on the roadway for its occupants constitute false misleading advertising within the meaning of California Business & Professions Code § 17500 as the manufacturer knew of the multiple defect(s) within the vehicle and then took steps to conceal the defect at the time of repair;

393.   Defendant(s), and each of them, knew of the unsafe condition of the Vehicle and further misrepresented the repair of the Vehicle to the general public and other dealers with access to the Vehicle history report via the manufacturer's own internal software and communication system;

394.   The Defendant(s), and each of them, made a profit from their unlawful, unfair and/or fraudulent business acts or practice and/or unfair, deceptive, untrue or misleading advertising;

395.   The Defendant(s), and each of them, profit was in excess of $150,000,000.00 (150 Million Dollars) from the sale of the Chevrolet Cruze in 2014 in the State of California;

396.   The Defendant(s), and each of them, pursuant to code, are not entitled to said profits from their unlawful, unfair and/or fraudulent business acts or practice and/or unfair, deceptive, untrue or misleading advertising;

397.   Plaintiff(s) demand at the answering of this Complaint for Damages, that the Defendant(s), and each of them, post a bond with this Court in the amount of $100,000,000.00 (100 Million Dollars) as the Defendant(s), and each of them, will have to disgorge their profits from the sales of the Chevrolet Cruze to the injured Plaintiff(s) in this action under the Code;

398.   The Defendant(s), and each of them, have participated in the same type of behavior in past instances, to which they have concealed the defects in all of the Vehicles listed herein;

399.   Plaintiff(s) seek the imposition of a constructive trust over, and restitution and disgorgement of, the monies collected and/or profits realized by Defendants as a result of their unfair business practices, and injunctive relief calling for Defendants to cease such false and misleading advertising in the future;

## THIRTEENTH CAUSE OF ACTION

## CIVIL RICO 18 U.S.C § 1961 *et. seq.*

(Plaintiff(s) against all Defendant(s), and DOES 1 to 50, inclusive)

400.  Plaintiff hereby incorporates in the preceding paragraphs by this reference information contained and the allegations contained in Paragraphs 1 through 399 as though set forth fully at this point, and each and every part thereof with the same force and effect as if set forth herein at length;

401.  The Plaintiff(s) is/are informed and believe(s), and thereon allege(s), that the Defendants, and each of them, constitute an enterprise, within the meeting of 18 U.S.C. 1961 § (4), and GM is a R I CO Enterprise as defined above and within the Code;

402.  The Plaintiff(s) is/are informed and believe(s), and thereon allege(s), that the Defendant(s), and each of them, are employed by or associated with the enterprise;

403.  The Plaintiff(s) is/are informed and believe(s), and thereon allege(s), that the activities of the defendants affect interstate commerce is, within the meaning of the Code and defined above in paragraph number 199;

404.  The Plaintiff(s) is/are informed and believe(s), and thereon allege(s), that the Defendant(s), and each of them, received income, directly and/or indirectly, by way of, inter alia, salary, compensation, reimbursement for expenses, per diem costs, reimbursements, meals, lodging, and/or travel, from the pattern of racketeering activity alleged here in and used that income in the acquisition of an interest in and or operation of the enterprise, in violation of 18 U.S.C. § 1962 (a), and acquired and/or maintain control over said racketeering enterprise through a pattern of racketeering activities, as set forth herein, in violation of 18 U.S.C. § 1962 (b);

405.  The Plaintiff(s) is/are informed and believe(s), and thereon allege(s), that the Defendant(s), and each of them, being associated with said enterprise, conducted and/or participated in said enterprise's affairs through a pattern of racketeering activities, such as fraudulent concealment as found herein, in violation of 18 U.S.C. §1962 (c);

406.  The Plaintiff(s) is/are informed and believe(s), and thereon allege(s), that the Defendant(s), and each of them agreed to and did conduct and participate in the conduct of the enterprise's affairs through a pattern of racketeering activity and for the unlawful purpose of intentionally defrauding Plaintiff, specifically, but not limited to, advertising a Vehicle for sale that is not safe for normal operation (as is specifically claimed in their sales brochures), cancelling the sale of the Vehicle once the defect was brought to the attention of the enterprise parties, repairing the Vehicle and destroying the evidence of the repair, offering financial incentives to the Plaintiff(s) to repurchase the defective Vehicle, concealing the true nature of the defect to innocent third parties and continually manufacturing similar vehicles with similar problems and not reporting the defects as required by law;

407.  The Plaintiff(s) is/are informed and believe(s), and thereon allege(s), that the Defendant(s), and each of them, have participated in similar activity in the past and will continue to do so until such time Courts intervene to stop said racketeering activity;

408.  The Plaintiff(s) is/are informed and believe(s), and thereon allege(s), that the Defendant(s), and each of them, participated in the pattern of racketeering activities that included a continuous pattern and practice, lasting over more than the last ten (10) years, involving activities of potential civil RICO predicates, set forth in the RICO predicate statutes, including, but not limited to, fraud, extortion and civil rights violations;

409.  The Plaintiff(s) is/are informed and believe(s), and thereon allege(s), that the Defendant(s), and each of them participated in at least three (3) acts of violating activities over the time period defined herein;

410.  The Plaintiff(s) is/are informed and believe(s), and thereon allege(s), that the Defendant(s), and each of them participated in the bad acts described in the matters enumerated hereinabove occurred over a significant period of time, and are related in that they evidence civil RICO predicates, including, but not limited to, at least fraud, wire fraud, mail fraud, false advertising, elder abuse, and pose a threat of continued criminal activity, have the same or similar purpose, results, participants and kinds and categories of

participation, victims, methods of commission, and are otherwise interrelated by their common characteristics and are not isolated events, and each and all constitute a continuing pattern of racketeering activity and constitute a long term threat of continuing pattern of racketeering activity;

411. The Plaintiff(s) is/are informed and believe(s), and thereon allege(s), that the Defendant(s), and each of them have the means of covering up their activities through the various enterprises and exclusive dealer network to which their product is distributed;

412. The Plaintiff(s) is/are informed and believe(s), and thereon allege(s), that these wrongful acts over a period of years and the bad acts alleged hereinabove enabled the Defendant(s), and each of them to acquire and maintain, both directly and indirectly, interests in and control of the racketeering enterprise in which they all engaged;

413. The Plaintiff(s) is/are informed and believe(s), and thereon allege(s), that the Defendant(s)', and each of them, activities led to their control and acquisition over their enterprise and resulted in the direct injuries to the Plaintiff(s), as alleged herein, which resulted from the Defendant(s), and each of them, control of the enterprise, allowing them to conceal their fraudulent and illegal behavior;

414. The Plaintiff(s) is/are informed and believe(s), and thereon allege(s), that the action or inaction of the Defendant(s), and each of them, resulting in the failure of the prevention of the wrongful conduct of one of the members of the enterprise, herein alleged, the misconduct that amounted to racketeering activities, all managerial and non-managerial Defendant(s), and each of them, engaged in and condoned the racketeering activities;

415. The Plaintiff(s) is/are informed and believe(s), and thereon allege(s), that the willful and/or negligent mismanagement and/or fraudulent activities of the enterprise for over ten (10) years, with knowledge by the Defendant(s), and each of them, charged with management and potentially other Defendants that it was and continues to be operated as a RICO enterprise, which directly caused the harm to the Plaintiff(s), as alleged herein;

416. The Plaintiff(s) is/are informed and believe(s), and thereon allege(s), that in furtherance and knowledge of their misconduct, the Defendant(s), and each of them, willfully

attempted to hide and destroy the evidence of the defect, which is in direct contradiction to that which they claim it to be, and paid for the "cover-up" through a series of "book entries" to hide the actual necessary repairs to the Vehicle as alleged herein which further demonstrates a pattern of racketeering activity pursuant to 18 U.S.C. § 1961(5).

417.  The Plaintiff(s) is/are informed and believe(s), and thereon allege(s), that the acquisition of control of the enterprise by its participants who engaged in the RICO predicate accts that harmed the Plaintiff(s);

418.  The Plaintiff(s) is/are informed and believe(s), and thereon allege(s), that the enterprise formed by the Defendant(s), and each of them, herein is an enterprise because it has a hierarchical structure and consensual structures for making decisions, such as design decisions, marketing decisions, sales decisions, and warranty decisions, and those structures have an existence beyond that which is necessary to commit the RICO predicate acts alleged herein, in that the hierarchical and consensual structures exist to accomplish doing business, and the structures for decision making exist separate and apart from the racketeering activities;

419.  The Plaintiff(s) is/are informed and believe(s), and thereon allege(s), that the Plaintiff(s) were harmed in several fashions, to wit, a TBI and Great Bodily Injury for Plaintiff, Christopher S. Hammatt, Great Bodily Injury for Plaintiff, Susan E. Hammatt, Emotional Distress to all Plaintiff(s), Discrimination, and that the Plaintiff(s) property was subjected to, affected by, and its value negatively affected by the Defendant(s), and each them, continuing Fraud;

420.  The Plaintiff(s) is/are informed and believe(s), and thereon allege(s), that both directly and indirect the Defendant(s), and each of them, in the acts and instances alleged herein, and others, have conducted the RICO enterprise's affairs and have, as a matter of fact, participated in the operation and *de facto* management of the RICO enterprise;

421.  The Plaintiff(s) is/are informed and believe(s), and thereon allege(s), that by the conduct alleged herein, each Defendant willingly participated in the operation, management, and functioning of the RICO enterprise himself and/or herself and played some role in directing

the affairs of the RICO enterprise and the activities of fraud alleged herein in violation of 18 U.S.C. § 1962(c).;

422.  Plaintiff(s) suffered injury and Plaintiff(s) property was harmed and value diminished as a result of the conduct against them, the Defendant(s), and each of them,  racketeering activities and violations of 18 U.S.C. § 1962(a),

423.  Further, in violation of the Defendant(s)', and each of them, racketeering activities, the Plaintiffs have been injured in their business and property in that as set forth hereinabove;

424.  Plaintiff(s) have suffered a material diminishment in value of his/her property, to wit, the replacement vehicle because it is defective and its value is diminished by the defect(s);

425.  Plaintiff(s) have suffered irreparable harm to tangential property as a result of the Injury Suffered by the illegal acts of the Enterprise Defendant(s), and each of them;

426.  The Plaintiff(s) is/are informed and believe(s), and thereon allege(s), that the Defendant(s), and each of them, unlawfully have engaged in the racketeering activities set forth in the preceding averments, and on numerous occasions, during the past 10 years and before that, through  a pattern of racketeering activity, and have acquired, directly and indirectly, control of the above identified enterprise;

427.  The Plaintiff(s) is/are informed and believe(s), and thereon allege(s), that the Defendant(s), and each of them, who are either officers, officials, are employed by or who are associated with the racketeering enterprise, have conducted that enterprise through a pattern of racketeering activity, to include, but not limited to email communications, telephone conversations, internal memorandum, banking fraud, wire fraud, mail fraud, false advertising and other actions described herein as set forth above;

428.  The Plaintiff(s) is/are informed and believe(s), and thereon allege(s), that through a pattern of racketeering activities, as set forth hereinabove, the Defendant(s), and each of them, acquired and/or maintained, directly and/or indirectly, interest in and/or control of the RICO enterprise and their activities by among other things, their own aggrandizement that flows therefrom;

429.  The Plaintiff(s) is/are informed and believe(s), and thereon allege(s), that by virtue of the allegations set forth hereinabove, some Defendant(s) were or/are employed by, all the Defendant(s), and/or were associated with said Defendant(s), and each of them, to which all Defendant(s), and each of them, participated in directly and/or indirectly with the RICO enterprise;

430.  The Plaintiff(s) is/are informed and believe(s), and thereon allege(s), that the Defendant(s), and each of them, unlawfully have conspired, as set forth hereinabove, to violate the provisions of 18 U.S.C. § 1962(b), (c), and (d), and continued to do so with the aid and assistance of the co-conspirators;

431.  Plaintiff(s) suffered substantial injury to his person and/or property by reason thereof, and the Plaintiff(s) are entitled to damages, to be trebled;

432.  Further, Plaintiff(s) injuries as a result of the racketeering activities warrant an award of Punitive Damages for the fraudulent concealment of the defects from the inception, manufacturing and repair of the Vehicle which is the subject of this complaint;

### FOURTEENTH CAUSE OF ACTION LOSS OF CONSORTIUM

(Plaintiff Susan E. Hammatt against all Defendant(s), and DOES 1 to 50, inclusive)

433.  Plaintiff hereby incorporates in the preceding paragraphs by this reference information contained and the allegations contained in Paragraphs 1 through 432 as though set forth fully at this point, and each and every part thereof with the same force and effect as if set forth herein at length;

434.  Plaintiff Susan E. Hammatt brings this cause of action for Loss of Consortium;

435.  By reasons of the injuries sustained by Christopher S. Hammatt, Plaintiff Susan E. Hammatt has been and will continue to be deprived of consortium, society, comfort, protection, and service, thereby causing and continuing to cause grief, sorrow, mental anguish, emotional distress, pain and suffering;

436.  Prior to the TBI suffered by Plaintiff Christopher S. Hammatt, both Christopher S. Hammatt and Susan E. Hammatt, were loving, caring, sexually active, consoling and caring towards one another, and commonly known as a very happy couple;

/
/
/
/
/
/
/
/
/
/
/
/
/
/
/
/
/
/
/
/
/
/
/

# V.

## **PRAYER FOR RELIEF**

**WHEREFORE** Plaintiff(s) prays for an immediate BOND in the amount of $100,000,000.00 (100 Million Dollars) be posted upon answer from the Defendants, and each of them, as they will have to disgorge all Profits from the sale of the Chevrolet Cruze pursuant to Code; and,

**WHEREFORE** Plaintiff(s) prays for judgment against Defendants, and each of them, as follows:

    1.    For judgment, jointly and severally, against each defendant;

    2.    For an amount of  property damage and personal injury, including but not limited to wage loss, hospital and medical expenses and mileage, future medical expenses, damage, emotional distress, general damages/pain and suffering, loss of earning capacity, loss of consortium, permanent disfigurement and other damages;

    3.    For general damages and compensatory damages against defendants and each of them in an amount to be proven at trial;

    4.    For special damages;

    5.    For exemplary and punitive damages in an amount to be proven at trial;

    6.    For a Constructive Trust to benefit the Plaintiff(s) for the false and misleading advertising pursuant to Code;

    7.    For costs of suit incurred herein;

    8.    For pre-and post-judgment interest; and,

    9.    For such other and further relief as the Court deems just and proper.

DATED:   August 3, 2015        BY:

                                          _____/s/ Joseph M. Hoats_____.
                                          Joseph M. Hoats
                                          Attorney for Plaintiff

**EXHIBIT A**

Order from the State Bar of California

**EXHIBIT B**

Photos of the Vehicle after the incident and before repair

**EXHIBIT C**

Cancellation of the Sales Contract for the Vehicle

**EXHIBIT D**

CarFAX Report

**EXHIBIT E**

Selling and Repairing Dealership Repair Orders

**EXHIBIT F**

Location of Vehicle Letter

**EXHIBIT G**

Workbench Report for the Vehicle